Weldon, J.,
delivered the opinion of the court:
The claimant alleges that he and G-eorge Aldus, as copart-ners, doing business as McKay & Aldus, on the 4th day of May, 1863, entered into a contract with the defendants for the construction of an iron-clad steam battery of wood and iron *431 combined, afterwards known as tbe Squando. Tbat at tbe time of making said contract tbey bad all tbe facilities for completing tbe same witbin six months (tbe time in wbicb by tbe terms of tbe contract tbey were to complete tbe same), and would bave done so if it bad not been for tbe delays occasioned by tbe acts of tbe Government; tbat it did not furnish drawings promptly nor in systematic order; tbat tbe officers in charge directed numerous alterations and changes from tbe original plan and at times suspended tbe work entirely; tbat such changes and failures on tbe part of tbe defendants consumed time and interfered with tbe progress of tbe work; tbat in consequence of such delays tbe completion of the work was delayed until tbe 5th of April, 1865.
Tbat tbe delays and changes resulted in increasing tbe expense of tbe contractors in building said vessel in tbe sum of 1414,696.44; tbat during tbe prolonged period occasioned by tbe acts of tbe defendants tbe price of labor and material advanced, and tbat no exercise of diligence and care on tbe part of contractors could have averted such increased price; tbat in doing extra work on said vessel contractors followed tbe drawings and specifications furnished by tbe officers of tbe Government; that in addition to tbe contract price tbe defendants bave paid tbe sum of $194,555.70 for extra work upon said ship, but tbat there is still due claimant tbe sum of $225,000 for extra work and damages because of tbe failures and negligence of tbe officers in charge of tbe construction of tbe work.
In an amended petition tbe claimant alleges tbat no person other than himself is interested in this claim; tbat no assignment has been made of it except tbat in tbe year 1868 be and tbe said George Aldus went into bankruptcy; tbat by operation of law tbe claim vested in tbe assignees in bankruptcy and was by them assigned to claimant for a valuable consideration to carry out a sale of tbe claim against tbe United States; tbat tbe assignees in bankruptcy, George Aldus and claimant, bave been loyal citizens of tbe United States.
It is alleged tbat certain specific alterations were made during tbe progress of tbe work, and tbat for these alterations tbe claimant and defendants agreed on tbe price, amounting to the sum of $92,547.22, and tbat amount has been paid. It is also conceded tbat for other alterations, increasing tbe *432 amount of work and material, tbe claimant was allowed and paid tbe sum of $101,135.70; but it is alleged that other alterations .were made and work done for which no allowance or payment has been made.
The issue in the case involves a claim for extra work and damages consequent upon the alleged delays and failures of the officers of the defendants to furnish plans and specifications according to the requirements of tbe contract. The suit is predicated upon the provisions of the act of August 30,1890, which is as follows:
“AN ACT for the relief of Nathaniel McKay and the executors of Donald McKay.
“Be it enacted by the Senate and Souse of Representatives of the United States of America in Congress assembled, That the claims of Nathaniel McKay and the executors of Donald McKay for further compensation for the construction of the iron-clad monitors Squando and Nauset and the side-wheel steamer Ashuelot may be submitted by said claimants within six months after the passage of this act to the Court of Claims, under and in compliance with the rules and regulations of said, court; and said court shall have jurisdiction to hear and determine and render judgment upon the same: Provided, however, That the investigation of said claim shall be made upon the following basis: The said court shall ascertain the additional cost which was necessarily incurred by the contractors for building the light-draught monitors Squando and Nauset' and the side-wheel steamer Ashuelot in the completion of the same by reason of any changes or alterations in the plans and specifications required and delays in the prosecution of the work: Provided, That such additional cost in completing the same, and such changes or alterations in the plans and specifications required and delays in the prosecution of the work were occasioned by the Government of the United States; but no allowance for any advance in the price of labor or material shall be considered unless such advance occurred during the prolonged term for completing the work rendered necessary by delay resulting from the action of the Government aforesaid, and then only when such advance could not have been avoided by the exercise- of ordinary prudence and diligence on the part of the contractors: And provided further, That the compensation fixed by the contractors and the Government for specific alterations in advance of such alterations shall be conclusive as to the compensation to be made therefor: Provided, That such alterations, when made, complied with the specifications of the same as furnished by the Government aforesaid: And provided further, That all moneys paid *433 to said contractors by the Government over and above the original contract price for building said vessel shall be deducted from any amounts allowed by said court by reason of the matters hereinbefore stated: And provided further, That if any such changes caused less work and expense to the contractors than the original plan and specifications, a corresponding deduction shall be made from the contract price, and the amount thereof be deducted from any allowance which may be made by said court to said claimants.
“Approved August 30,1890.”
This suit is not prosecuted by claimant as surviving partner of McKay & Aldus, but in his individual right, founded upon a deed of assignment of the assignees in bankruptcy of McKay & Aldus, who were declared bankrupts in the year 1868. At a sale of a portion of the assets of the firm the plaintiff, among other assets, purchased the claim against the United States, as shown by the deed of assignment set forth in the findings. It is contended that if a judgment is recovered it can only be for one-half of the amount to which the firm of McKay & Aldus would be entitled to on the facts and law of the case. The statute of our jurisdiction does not limit the right of recovery as contended for by defendants. If the plaintiff was remitted to the legal rights originally inherent in the firm of McKay & Aldus, he would be compelled to sue as surviving partner of McKay & Aldus; but predicating his right and title on the deed of assignment to him, by the assignees of the firm of McKay & Aldus under the statute giving the court jurisdiction, and aside from any and all questions of the rights of the assignees under the bankrupt act and the statutes of the United States, we determine that the suit is properly brought, and the claimant is entitled to have his claim heard upon its legal merits. The right of an assignee to maintain a suit in his own name is sustained by the following decisions.
It was held in the ease of Ervin v. The United States (97 U. S. R., 392): “The act of Congress of February 26,1853, to prevent frauds upon the Treasury of the United States, which was the subject of consideration in the Gillis Case, applies only to voluntary assignments of demands against the Government. It does not embrace cases where there has been a transfer by operation of law. The passage of claims to heirs and devisees or assignees in bankruptcy is not within the evils at which the statute aimed; nor does the construction given by this court deny to such parties a standing in the Court of Claims.”
*434 In the case of Goodman v. Niblack (102 U. S. R., 556), it was held that section 3477, Kevised Statutes, did not prevent a claim from passing to an assignee under a general assignment for the benefit of creditors. The court said: “In what respect does the voluntary assignment for the benefit of creditors — which is made by an insolvent debtor of all his effects, which must, if it be honest, include a claim against the Government — differ from an assignment which is made in bankruptcy.” (United States ex rel. Redford v. Windom, 137 U. S. R., 636.)
The object of the statute was to give claimant individually a standing in this court, so as to enable him to investigate the full claim, as it originally existed in the ownership of McKay & Aldus. His rights are to be determined upon the limitations and qualifications set forth in the several provisos to that part of the law which confers jurisdiction on the court “ to hear and determine and render judgment on the same.” The claim has been pending in some form or other before the different departments of the Government continuously, until by the enactment of the law of 3.890 it was sent by Congress to be judicially adjudicated by a proper form of action in this court.
On the 10th day of February, 1863, the Navy Department published an advertisement under which the firm of McKay & Aldus made a bid, and from which originated the contract of May 4,1863, in and by the terms of which they agreed to build the Squando for the sum of $395,000, the work to be finished within six months from the date of the agreement. Among other provisions it is stipulated:
“ It is further agreed that the parties of the second part shall have the privilege of making alterations and additions to the plans and specifications at any time during the progress of the work as they may deem necessary and proper, and if said alterations and additions shall cause extra expense to the parties of the first part they will pay for the same at fair and reasonable rates, and should such changes cause less work and expense to the parties of the first part, a corresponding reduction to be made from the contract price, and in each case the cost of the alterations to be determined when the changes are directed to be made.”
It does not appear, that the cost of the changes as to the items in controversy was determined at the time when they *435 were directed to be made. Changes to the amount of $92,847.52 were made and the prices agreed upon, but such changes are not in controversy in this proceeding. That provision of the contract seems to have been disregarded to the extent of more than $100,000, which has been paid, and as to the alleged changes and alterations, for which this suit was brought.
The particular grievance complained of upon the part of the contractors was, the alleged delay of the officers in charge in furnishing drawings and plans, with sufficient facility to enable the parties to prosecute the work with diligence and complete the same within the time specified by the agreement. The work was not completed until April, 1865, nearly two years after the date of the agreement. The first delay, as shown by the findings, arose from the failure of the defendants to furnish plans and specifications until about the 26th of May, 1863, which prevented the contractors from entering upon the performance of the contract at as early a period as they might have done. At the time the contract was made the building of the class of war vessels to which the Squando belonged was to some extent an experiment, and the plan of a vessel was necessarily subject to the changes which might from time to time be suggested by the rapidly occurring developments of war.
It was determined by the officers in charge to take advantage of experience, and from time to time make such improvements and alterations as were deemed expedient, although it might involve delay and require a departure from the terms of the contracts then existing. For the purpose of adopting that policy to its fullest extent, the provision as to changes and alterations was evidently inserted in the agreement which we have quoted.
Having considered and determined, the right of the plaintiff to sue in his individual name because of the assignment to him under the sale by the assignees in bankruptcy of McKay & Aldus, his rights are to be measured by the application of the provisions of the law of our jurisdiction to the facts found from the evidence and stated in the findings of the court. The contract required McKay & Aldus to finish the vessel in six months from the time of making the contract, which expired on the 4th of November, 1863. The vessel was not completed un *436 til April, 1865, which, was nearly seventeen months in excess of the time limited by the terms of the agreement. This was an extraordinary delay, considering the fact that the vessel was intended for use in the war which was then flagrant.
At the time the contract was made the contractors were the owners of a shipyard in or near East Boston, with facilities to enter upon the performance of the agreement at once, and within a reasonable time were possessed of the means and facilities to prosecute to a faithful performance the entire contract within the time limited by the terms of the agreement. It does not appear that any part of the delay was occasioned by the want of diligence upon the part of the contractors, nor that any complaint was made by the officers in charge of the construction that the contractors were not sufficiently diligent in the performance of the work. As has been stated, the defendants were experimenting in the construction of war vessels, and the result of that was thatthe Squando when built differed very materially from its construction as intended by the original plan.
During the period of its construction the contractors were continually complaining to the officers in charge because of the delay, and while so delayed exercised reasonable diligence to prevent increased cost in the value of material and labor. Under the statute the court is to ascertain the additional cost, if any, which was necessarily incurred by the contractors in building the light draft Squando, in the completion of the same, by reason of any changes or alterations in the plans and specifications required and delays in the prosecution of the work, subject to certain rules and limitations prescribed by the statute.
The issue by the terms of the statute is circumscribed to two questions: First, whether there was any alteration made in the construction and material of the Squando increasing .the cost of the work for which the contractors have not been paid; and, second, whether there was any delay not the fault of the contractors which enhanced the cost of the material and labor. In accordance with the terms of the agreement, the parties settled by express stipulation the cost and value of certain additions and alterations, to wit: $90,000 for raising the vessel 22 inches, the sum of $1,547.52 for bulkhead in quarters, $1,000 for pilot house, and $300 for alteration in port stopper, making in the aggregate the sum of $92,847.52.
*437 In addition to the sum allowed and paid fox these alterations, the contractors have been paid for other alterations and additions to the extent of $101,530.70, which did not come within the original contract, nor within the additions and alterations specifically stipulated for in the item of $92,847.52. The last payment, which was made by the defendants after the completion of the work and acceptance of the vessel, was on the 13th day of July, 1865, at which time and for which payment the contractors executed a receipt, as shown in the findings. Whatever may have been the legal effect of that receipt, the purpose and effect of the statute are to open the account between the parties, and to give to the claimant whatever may be due him, (subject to the limitations of the law) for the reasonable value of additions and alterations not heretofore paid for, and which were additional to the original contract and damages for the delays.
The findings show that in consequence of the delay occasioned by the failure of the defendants to furnish specifications, plans, and drawings at proper times the increased cost of material and labor occurring during the prolonged term for the completion of the work was in the aggregate the sum of $60,462 upon the materials and labor necessary to perform the original contract; that the additional work performed and material furnished beyond the requirements of the original contract not allowed by the defendants in the payments made is the sum of $41,375; that the clerk hire employed by the defendants for the time in which the claimant was delayed by the failure of the defendants and the additional watchmen necessarily employed by claimant in consequence of the prolonged period in consequence of the failures of the defendants is the sum of $13,320. The loss to the contractors in consequence of the increased price of labor and material was much larger than the sum allowed, but that loss does not come within the limit of the statute, and is disallowed.
As to the additional item for the use and rent of the plant of the claimant for the period prolonged by the delays incident to the failure of the defendants we make no allowance. The right to recover under the terms of the law is limited to the additional cost which was necessarily incurred by the contractors. If the contractors did anything beyond the requirements of the contract for which they have not been paid, the *438 reasonable value of sucb work is a cost incurred within the meaning of the law, and then by the proviso an allowance is to be made for any increase in cost of labor and material which may have occurred during the prolonged period which could not be avoided by the exercise of ordinary prudence and diligence on the part of the contractors. It is impossible from the general nature of the testimony to reach a satisfactory result as to the reasonable value of the plant; but holding as we do that such a claim is not within the act of Congress, it is not material.
Aggregating the sums for which an allowance is made in the conclusion of law a judgment will be entered for the claimant in the sum of 8115,157.
Peelle, J., was absent when this case was heard and took no part in the decision.