Nott, Ch. J.,
delivered the opinion of the court:
This case is identical with a number of cases which have been before the court — the cases of the Squando (27 C. Cls. R., 422), the Nauset (29 id., 567), the Umpqua (28 id., 564), and the Baubue (31 id., 468) — in every particular save one. The vessel constructed was one of a class, the “ light-draft monitors;” the contract and specifications of all were the same; the vessel in size and form was the same; the period of construction was substantially the same; the nature of the changes, alterations, and delays was the same; the increase in the cost of labor and material during the time of construction was the same; and the statute referring the case to this courtis identical in terms with the other statutes of reference.
The particular in which the case differs from the others is this: After the contract had been executed and the work had been begun the Navy Department objected to the vessel being built in Boston and insisted that it was the purpose and policy of the Department that she should be built in Portland, Me. This requirement was not expressed in the contract, or in the specifications, or in the advertisement for proposals, or in any letter or paper which has been brought to the attention of the court. The builder remonstrated, but the Department was imperative and the builder expressed his willingness to yield. About this time the-Department discovered that an instrument had been executed by the contractor and the treasurer of the Globe Works in Boston which the Department construed to be ah assignment of the contract. The matter was referred to the Attorney-General, and he gave an opinion holding that this agreement was an assignment and worked an annulment of the contract under the Act 17th July, 1862 (12 Stat. L., 596). Some correspondence ensued, in which the *255 builder reiterated bis willingness to construct tlie vessel at Portland, and resulted in tbe execution of a second contract . differing from tbe first only in dates.
Before tbe execution of this second contract plans and specifications had been furnished by tbe Department and work for tbe vessel bad been begun in the Globe Works in Boston, and delays bad occurred on tbe part of tbe Government. Tbe only effect of tbe second contract on the case is this, that if it be taken as fixing tbe beginning of tbe mutual obligations of tbe parties, of tbe builder to construct a vessel within eight months and of tbe employer to enable him to do so, tbe period of obligation will be postponed five months and tbe amount of damages to be recovered will be reduced from $ 13b, 187 to $36,385.
All of tbe payments that were made to tbe builder assumed to be made under tbe second contract, and tbe counsel for the claimant has conceded tb at tbe work was technically done under that contract; but tbe Department allowed and made payments for alterations which bad been ordered before tbe date of the second contract, and the case was so treated by tbe Gregory board, a naval board presided over by Admiral Gregory which examined all tbe claims of all tbe contractors and recommended allowances to them. (See 27 C. Cls. R., 422, where tbe history of tbe Gregory board is given.)
Tbe theory upon which tbe previous cases were decided was this: The court regarded tbe contract as giving to tbe builder a period of eight months within which be was bound to construct and complete tbe vessel, and to tbe Government, reciprocally, the same period of eight months within which it was not responsible under tbe statute “for any advance in tbe price of labor or material.” The “ prolonged term for completing tbe work,” in tbe opinion of tbe court, began when tbe eight months expired. In this case tbe first contract bore date tbe 2d day of June, 1863, and tbe period of construction, therefore, would have expired on tbe 2d day of February, 1864. If that was tbe day when tbe Government’s liability began for “ additional cost of labor and material” and for increased expenses, tbe claimant should recover for—
Increased cost of labor. $36,440.01
Increased cost of materials. 55,540.50
Expenses, superintendence, etc. 7,288.00
Amounting in all to. 99,268.51
*256 The second contract bore date November 3,1863, and consequently the period of eight months expired on the 3d day of July, 1864. If that was the day on which the liability of the Government began, the claimant should recover nothing for increased cost of labor or increased cost of material and only $5,466 for “expenses, superintendence, etc.” In either of these alternatives the claimant should also recover for an unpaid balance of changes and alterations ordered by the Navy Department, $30,919.08. The total recovery therefor on the claimant’s theory of the case should be $130,187.59 and on the defendant’s, $36,385.08.
The position taken by the counsel for the claimant is substantially that which was taken by the Gregory board, when they disregarded the date of the second contract and considered alterations and additions as if a part of the work had been done under the first. The counsel contends that it was the intention of Congress when they referred the claim to this court that the contractor should be made whole for changes and alterations ordered by the Navy Department and for damages sustained by reason of delays in the progress of the work caused by the officers of the Government, irrespective of the contract or contracts.
It is true that when this special act was passed conferring jurisdiction and declaring and limiting the liability of the United States, the claimant could not recover upon either contract. Its terms constituted a complete defense. This had been decided by the highest judicial authority in the case of the Etlah (Chouteau v. The United States, 95 U. S., 61). Congress therefore disregarded the term of the contract when they enacted this law, which is in these words:
“AIN* ACT for the relief of the administratrix of the estate of George 'W. La-wrenoo.
uJBe it enacted by the Senate and House of Representatives of the United States of America in Congress assembled. That the claims of George W. Lawrence for further compensation for the construction of the United States monitor Wassuc may be submitted by said claimant within six months after the passage of this act to the Court of Claims, under and in compliance with the rules and regulations of said court; and said court shall have jurisdiction to hear and determine and render judgment upon the same: Provided, however, That the investigation of said claim shall be made upon the following basis: The said court shall ascertain the additional cost which was necessarily *257 incurred by tbe contractor for tbe construction of tbe United States vessel Wassuc in tbe completion of tbe same by reason of any cbanges or alterations in tbe plans and specifications required and delays in tbe prosecution of tbe work: Provided, Tbat sucb additional cost in completing tbe same, and sucb changes or alterations in tbe plans and specifications required, and delays in tbe prosecution of tbe work, were occasioned by tbe Government of tbe United States; but no allowance for any advance in the price of labor or material shall be considered unless sucb advance occurred during tbe prolonged term for completing tbe work rendered necessary by delay resulting from tbe action of the Government aforesaid, and then only when sucb advance could not have been avoided by tbe exercise of ordinary prudence and diligence on tbe part of the contractor: And provided further, Tbat the compensation fixed by tbe contractor and tbe Government for specific alterations in advance of sucb alterations shall be conclusive as to tbe compensation to be made therefor: Provided, That sucb alterations when made complied with tbe specifications of tbe same as furnished by tbe Government aforesaid: And provided further, Tbat all moneys paid to said contractor by tbe Government over and above the original contract price for building said vessels shall be deducted from any amounts allowed by said court by reason of the matters hereinbefore stated: And provided further, Tbat if any sucb cbanges caused less work and expenses to the contractor than tbe original plan and specifications a corresponding deduction shall be made from the contract price, and tbe amount thereof be deducted from any allowance which may be made by said court to said claimant.
'“ Approved, October 1, 1890. (26 Stat. L., 1314.)”
Here it will be seen tbat tbe liability of tbe defendants is limited to cbanges, alterations, and delays “occasioned by tbe Government,” and that an allowance “ for any advance in tbe price of labor or material” is limited to “tbe prolonged term for completing tbe work rendered necessary by delay resulting from tbe action of tbe Government.”
It is possible tbat tbe change of tbe work from Boston to Portland and tbe redating of the contract as of November 3, 1863, instead of June 2, 1863, did not materially delay tbe final completion of the vessel. It is possible tbat if tbe Government bad banded to tbe builder on tbe 3d of November all of tbe plans and specifications of tbe vessel, and allowed her to be built in the form originally intended, be might have completed her by tbe 2d of February, 1864, i. e., within the *258 eight months of the first contract. But that possibility is not a thing to be assumed. There is no evidence in the case which would warrant the court in finding it as a fact. The statute contemplates a term within which the builder had to run the risks of increased cost of a rising market; and it designates another term of changes,, alterations, and delays during which the Government would be responsible for the enhanced market price of labor and material. Manifestly the one term must end before the other term could begin.
The questions therefore remain: During what period did the Department hinder and delay the work? During what period was there a rise in the prices of labor and material? During what period did the contractor by his own acts contribute to the delay; and if so, to what extent did he thereby diminish the liability of the Government?
The counsel for the claimant has also by an elaborate argument attacked the action of the Navy Department in refusing to allow the vessel to be constructed in Boston and in construing the instrument before referred to to be an assignment of the contract and in declaring an annulment of the contract as before stated. But the court does not feel at liberty to review those questions. The abandonment of the old contract, the execution of the new, the removal of the work from Boston, and the continuance of the work at Portland constituted the compromise of a matter in dispute; and the court must take the matter as the parties have left it. That is to say, the court must assume that by mutual agreement the first contract was canceled and the second was entered into, and the vessel was built in Portland instead of in Boston and by the contractor and not by the Globe Works.
These changes took place during the eight-month period of the first contract, and they necessarily involved delay. That delay, from a moral point of view, may have been caused by the Government, but from a legal point of view it was caused by the contractor. By submitting to the demands of the Government, by entering into a new contract, by constructing the vessel in Portland, he acquiesced in the Government’s demands. After the eight-month period of the first had begun to run, the contractor had to remove manufactured material from Boston to Portland and erect a building there for the construction of the vessel, and put new machinery in his works, and *259 organize a force. These changes were delays, and delays for which he was responsible. From his then point of view it was necessary that the original eight-month period should be extended; that he should not be subject to penalties if he should not complete the work within eight months from the 2d June, 1863. This extension of time he obtained by means of the second contract. ' In the absence of evidence to show within what time he could have completed the contract at Portland if he had not been hindered and delayed, or to show how much time the change from Boston' to Portland involved, the court must hold that the term for completing the work for which the Government is responsible began at the expiration of the term of the second contract, to wit, on the 4th of July, 1864.
The judgment of the court is that the claimant recover of the defendants the sum of $36,385.08.
Howry, J., took no part in the decision, the case having been argued before he took his seat.