**FIRST NATIONAL CITY BANK**

v.

**The UNITED STATES.**

No. 9–75.

United States Court of Claims.

June 16, 1976.

Joseph H. Levie, New York City, attorney of record for plaintiff. Franklin N. Meyer, New York City, of counsel.

Leslie H. Wiesenfelder, Washington, D.C., with whom was Asst. Atty. Gen., Rex E. Lee, Washington, D.C., for defendant.

Before DAVIS, NICHOLS and KUNZIG, Judges.

ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

KUNZIG, Judge:

Plaintiff, First National City Bank, comes before the court seeking a recovery as assignee of certain Government contract rights, ($54,369.37 plus interest) free of defendant's independent set-off claims. The contract in question contains set-off protection language. Under the facts of the instant action, plaintiff has standing to sue either as beneficiary of a prior assignment of the contract, or as subrogee, and may use the set-off protection provisions. We hold for plaintiff.

I

Facts:

The facts are somewhat involved. The genesis of the present claim is found in a December 28, 1966, contract between Trilon Research Corp. (Trilon) and defendant. For a consideration of $87,318.46 Trilon agree to prepare and update certain Navy technical manuals. On April 19, 1967, defendant made an initial progress payment under the contract to Trilon in the amount of $46,527.43.

The contract contained the usual financing and assignment clauses, incorporating by reference the provisions of the Armed Service Procurement Regulations (ASPRs), Paragraph 7–103.8 ASSIGNMENT OF CLAIMS (Feb. 1962), which in turn is based on the Assignment of Claims Act.[1]

Pursuant to these provisions, Trilon,[2] Franklin National Bank (Franklin), and the Small Business Administration (SBA) entered into a financing arrangement. Trilon obtained a loan of $250,000, $125,000 from Franklin and the balance from the SBA. As collateral, Franklin and the SBA took a lien on Trilon's inventory and receivables. The lenders, with Franklin acting as trustee, also obtained as assignment of Trilon's right to Government contract payments, including but not limited to, the contract at issue in the present case.[3] Defendant received notice of Trilon's assignments on May 12, 1967. The parties completed the initial financing in July 1967.

By November 1968, Trilon had completed its work on the technical manual contract. In addition to the $46,527.43 progress payment already made to Trilon, defendant had further paid Franklin (as trustee) the remaining $40,791.03. However, "accord and satisfaction" was delayed due to a dispute concerning amounts Trilon had earned for extra work.

One year later plaintiff entered the scene by making loans to financially troubled Trilon. The initial loan was for more than

---

1. 31 U.S.C. § 203 (1970) and 41 U.S.C. § 15 (1970). *See Part III, infra.*

2. Through a subsidiary, P & D Electronics Co.

3. The primary purpose of Trilon's formation and the bulk of its operations were directed to Government contract work. The technical manual contract, while central to the instant case, cannot be viewed as an isolated or even a crucial part of the various financing arrangements.

Note also, that the SBA agreed to subordinate its one-half interest in the collateral to Franklin.

$250,000. In September 1969, the SBA advised Franklin that it had agreed to subordinate its one-half interest in Trilon's inventory and receivables (including Trilon's Government contracts) to plaintiff. Subsequently, plaintiff loaned Trilon additional amounts and is now owed more than $400,000 by Trilon.

Still later, in September 1971, Franklin found itself in severe economic difficulty. Franklin "called" its loans to Trilon and threatened to call the SBA's loan. Attempting to forestall this action, Trilon issued a $45,000 check payable to Franklin and drawn on plaintiff. However, plaintiff held a prior right to the $45,000 based upon the independent loans to Trilon. To permit Trilon to continue work on its ongoing Government contracts, Franklin and plaintiff entered into a refinancing arrangement. Franklin trasferred its security interests in Trilon's receivables (including Government contract rights) to plaintiff. Plaintiff paid Franklin $52,812.[4]

As a result of the refinancing, in November 1971, Trilon executed a second "notice of assignment" of the technical manual contract. Trilon assigned the payment rights to plaintiff. The notice was sent to defendant who neither rejected nor accepted it but remitted the documents to plaintiff to obtain a release of Trilon's prior assignment to Franklin.

From late 1968 through 1971, the dispute over Trilon's entitlement to additional compensation on the technical manual contract continued. Progress toward resolution finally began in February 1972, when the Contracting Officer (CO) ruled that Trilon had earned an additional $62,181.37. Trilon filed a notice of appeal, but the parties subsequently reached an agreement to adopt the CO's figure. Significantly, a copy of defendant's agreement to resolve the dispute was sent by the Government not to Franklin or the SBA but to plaintiff.

However, plaintiff and defendant failed to agree on plaintiff's right to receive the $62,181.37. Defendant claimed that it had sufficient set-offs[5] to obliterate plaintiff's entitlement to the award. Plaintiff countered that the technical manual contract contained set-off protections enabling it, as assignee, to receive the $62,181.37, free of defendant's set-off claims.

On December 3, 1973, defendant submitted this question to the General Accounting Office (GAO). The Comptroller General held that plaintiff could recover $7,812 free of defendant's set-off claims.[6] However, the GAO disallowed the balance of the $62,181.37 on the basis that plaintiff was precluded from use of the set-off protections because it had not participated in the financing of the technical manual contract. Since plaintiff had not extended funds toward the contract, reasoned the GAO, plaintiff could not assert the set-off protections contained in the Assignment of

---

4. The $52,812 represented Franklin's remaining risk on the $125,000 loan. To make the payment plaintiff released its priority rights to the $45,000 check and paid Franklin an additional $7,812 in cash.

5. At this time, Trilon owed the IRS $157,312.73 and was also indebted to the Government for unliquidated progress payments on an unrelated Government contract in the amount of $213,211.49.

6. The GAO decision casts plaintiff's recovery in terms of "assignee-principal" or "beneficiary-principal." However, its reasoning appears to be based on a subrogation theory. According to the GAO, Franklin by virtue of the 1967 assignment was entitled to receive $125,000 from the Government or Trilon, without set-off. Franklin had received all but $7,812 of the $125,000 at the time of the refinancing. When

plaintiff paid Franklin the $7,812 it stepped into Franklin's shoes and obtained the right to receive $7,812 in Government contract proceeds free of set-offs. The fact that Franklin had been paid the $7,812 did not void defendant's liability for this amount because defendant was a stranger to the refinancing and so far as the Government was concerned, still owed Franklin the $7,812.

Note that the GAO opinion fails to deal with the release of the $45,000 check by plaintiff to Franklin. Presumably the GAO felt that this constituted a payment by Trilon to Franklin, rather than a payment by plaintiff. However, the GAO's failure to explain the reasons for its award of $7,812 to plaintiff rather than $52,812 ($7,812 plus $45,000) casts some doubt on the validity of the GAO's conclusion.

Claims Act and the ASPRs. Comp.Gen.Dec. B–180271 (Aug. 22, 1974).

Plaintiff then brought the instant action in its own name [7] to recover the $54,369.37 ($62,181.37 less $7,812) plus interest, disallowed by the GAO.[8]

## II

### Positions of the Parties:

Plaintiff argues it has standing to sue on the technical manual contract. First, contends plaintiff, it may sue as the "real party in interest" in this matter. Second, plaintiff asserts a right to bring the present action as beneficiary of the 1967 assignment from Trilon to Franklin. Third, plaintiff urges standing as subrogee of Franklin's interests. Finally, plaintiff suggests that it has acquired a right to maintain an action as the legal assignee of the present claim under the Assignment of Claims Act.

According to plaintiff, once the standing issue is resolved in its favor, it may sue on the contract and obtain the benefit of the set-off protective language contained therein. Thus, plaintiff argues, it is entitled to recover the amounts at issue here, free of defendant's set-off claims.

In opposition defendant contends that it may set-off Trilon's independent debts against any funds due plaintiff on the technical manual contract. If plaintiff cannot sue on the contract, it cannot use the benefit of the set-off protections. Second, says defendant, even if plaintiff has standing to sue it can assert no greater rights than Franklin. Since Trilon and the Government were discharged from any liability on the technical manual contract by plaintiff's voluntary payments to Franklin, plaintiff can recover nothing. Third, defendant argues that plaintiff has not participated in

the financing of the technical manual contract and loses the benefits of the set-off protections by its failure to come within the requirements of the ASPRs and the Assignment of Claims Act.

The issues in the present action center on the question of plaintiff's entitlement to the set-off protections contained in the Assignment of Claims Act, the ASPRs and the technical manual contract. The case thus resolves into an inquiry of whether plaintiff's financing activities comport with those envisioned by Congress in its establishment of the set-off protections for assignee-lenders. Based on the facts of this case, after considering the law, the motions and briefs of the parties, and after oral argument, we hold that plaintiff is entitled to recover the $54,369.37, free of set-off liability.

## III

### The Set-off Protections:

■ From the time of the earliest contract awards in the nineteenth Century, assignment of Government contract claims has consistently been restricted by statute. *See e. g., Continental Bank & Trust Co. v. United States,* 189 Ct.Cl. 99, 103, 416 F.2d 1296, 1298 (1969). The purpose of such restrictions is to protect the Government by preventing fraud, avoiding multiple litigation and preserving set-off and counterclaim defenses against contractor-assignors. *Consumers Ice Co. v. United States,* 201 Ct.Cl. 116, 119, 475 F.2d 1161, 1163 (1973). However, by 1940 it became apparent that the restrictions were hindering the financing of Government contract work and thereby unduly constricting competitive bidding.

In 1940, Congress amended the Act to permit contract assignment to "a bank,

---

**7.** Neither the European-American Bank & Trust Co. (as purchaser of certain Franklin assets) nor the Federal Deposit Insurance Corp. (as transferee of other Franklin assets) appeared in this action, despite the issuance of Ct.Cl. Rule 41(a)(1) notices to appear as parties. In fact, the FDIC's response indicates that neither it nor Franklin has any such interest.

**8.** Plaintiff's petition seeks $55,188 plus interest. However, this appears to be based upon an erroneous figure attributed to the CO's award and plaintiff's summary judgment brief revises the claim to $54,369.37.

trust company, or other financing institution" participating in the financing of Government contracts which provided for payments aggregating $1000 or more. Act of Oct. 9, 1940, 54 Stat. 1029 (1940). The Act's amendments also provided that assignees would be free from Government set-offs. As stated by the court in *Chelsea Factors, Inc. v. United States,* 149 Ct.Cl. 202, 181 F.Supp. 685 (1960):

> The 1940 Amendment to the Assignment of Claims Act was intended to facilitate the financing of Government contracts by private capital in the way in which private capital normally operates in financing the country's economy. [*Id.,* 149 Ct.Cl. at 210, 181 F.Supp. at 690].

After the 1940 amendment, the Comptroller General construed the Act's set-off protections quite narrowly. Thus, in 1951 Congress enacted another amendment to broaden the set-off protection. Act of May 15, 1951, 65 Stat. 41. *See Continental Bank, supra,* 189 Ct.Cl. at 106, 416 F.2d at 1300–01.

Such legislative action clearly demonstrates the intent of Congress to have the Act's amendments broadly, not narrowly, construed in order to encourage the financing of Government contracts. As stated by Supreme Court Justice Reed (Ret.), sitting by designation in *Coleman v. United States,* 158 Ct.Cl. 490 (1962):

> The progressive liberalization of the Act by its various amendments manifests the purpose of Congress to protect effectively assignments in accordance with the Act. [*Id.* 158 Ct.Cl. at 492–93].

With background established, we turn to the specific set-off protections at issue in the instant case.

Trilon's technical manual contract included by reference the standard financing and assignment provisions provided in the ASPRs. Drafted with reference to the Assignment of Claims Act, the ASPRs permit assignment and reassignment in certain instances. They also grant set-off protection to assignees:

> [I]f this contract provides for payments aggregating $1,000 or more, claims for monies due or to become due the contractor from the Government under this contract may be assigned to a bank, trust company, or other financing institution, * * * and may thereafter be further assigned and reassigned to such institution. Any such assignment or reassignment shall cover all amounts payable under this contract and not already paid, and shall not be made to more than one party, except that any such assignment or reassignment may be made to one party as agent or trustee for two or more parties participating in such financing. Unless otherwise provided in this contract, *payments to an assignee of any monies due or to become due under this contract shall not, to the extent provided in said [Assignment of Claims] Act, as amended, be subject to reduction or set-off.* [ASPR ¶ 7–103.8 (1962) (emphasis added)].

Plaintiff contends it may use the benefits of this set-off protection language because it is entitled to sue on the contract.

The ASPR relied upon by plaintiff is based on the Assignment of Claims Act, 31 U.S.C. § 203 (1970) and 41 U.S.C. § 15 (1970). As a general rule, the Act prohibits assignments of claims against the Government. However, as stated above, Congress has provided for certain assignments in order to encourage financing of Government contracts and has granted set-off protection rights to eligible assignees:

> The provisions of the preceding paragraph [invalidating assignments of claims against the Government] shall not apply in any case in which the moneys due or to become due from the United States * * under a contract providing for payments aggregating $1,000 or more, are assigned to a bank, trust company, or other financing institution * * * : *Provided,*
>
> * * * * * *
>
> 3. That unless otherwise expressly permitted by such contract any such assignment shall cover all amounts payable under such contract and not already paid,

shall not be made to more than one party, and shall not be subject to further assignment, except that any such assignment may be made to one party as agent or trustee for two or more parties participating in such financing;

\* . \* \* \* \* \*

\* \* \* [P]ayments to be made to the assignee of any moneys due or to become due \* \* \* shall not be subject to reduction or set-off for any liability of any nature of the assignor to the United States \* \* \* which arises independently of such contract \* \* \*. [31 U.S.C. § 203 (1970) and 41 U.S.C. § 15 (1970)].

It is these code provisions containing the set-off protection language, as incorporated into the technical manual contract through the ASPR cited above, that plaintiff relies upon in the instant case.

We not turn to the problem of whether plaintiff has standing to bring the instant action.

## IV

### Standing:

Plaintiff argues that it has standing to sue on the contract (and to obtain the benefit of the setoff protections) as (1) real party in interest, (2) beneficiary of the 1967 assignment, (3) subrogee of Franklin's interests, or (4) legal assignee based on Trilon's 1971 reassignment. The GAO held that plaintiff could recover $7,812, apparently as subrogee of Franklin, but held that plaintiff could not recover any additional portions of the $62,181.37. Comp.Gen.Dec. B–180271, *supra*. Plaintiff now seeks to recover, free of set-offs, the $54,369.37 disallowed by the Comptroller General. Defendant counters that plaintiff has no standing to sue on the contract and that the set-offs obliterate the $54,369.37.

We hold that plaintiff has standing to sue on the contract either as beneficiary of the 1967 assignment from Trilon to Franklin, or

as subrogee of Franklin's rights under the 1971 refinancing.[9] Further, we conclude that plaintiff may bring the instant action in its own name.

### A. Plaintiff as Beneficiary

■ Plaintiff has standing to maintain the present action as beneficiary of Trilon's 1967 assignment of the technical manual contract to Franklin (initially as trustee for itself and the SBA). The primary basis for this conclusion is the court's opinion in *Chelsea Factors, Inc. v. United States,* 149 Ct.Cl. 202, 181 F.Supp. 685 (1960). There, we had occasion to construe the Assignment of Claims Act and contract provisions identical to those presented in the case at bar. In *Chelsea,* a food wholesaler had contracted with the Government to supply frozen vegetables. The contractor assigned its payment rights to a bank. The bank and a factoring company in return agreed to release frozen vegetables (upon which they held a warehouseman's lien) so that the food could be delivered to the Government. The contractor made two deliveries to the Army, but shortages were discovered. Defendant withheld payment. When the factoring company brought suit in the Court of Claims for payment on the food actually delivered, the Government attempted to set-off certain fraud liability of the wholesaler owed to defendant.

The court held that the factoring company, although not named as a party to the assignment of the contract, was entitled to use the set-off protections found in the Act and the contract as beneficiary of the assignment from the contractor to the bank.

> The arrangement between the bank, the plaintiff, and Suburban [the contractor] in the instant case, made the bank a trustee for the plaintiff of Suburban's assignment to the bank. [*Chelsea, supra,* 149 Ct.Cl. at 208, 181 F.Supp. at 689].

The instant case is analogous to *Chelsea.* Franklin, after reassigning the equitable

---

**9.** We determine that plaintiff may sue as beneficiary or subrogee. Therefore, we do not address plaintiff's other standing arguments.

right to receive the technical manual contract proceeds, continued to hold the legal right to the proceeds as trustee.[10] The beneficial interest in the contract passed to plaintiff. The provisions of the Act and the ASPRs were not violated because Franklin, a single party, continued to act as trustee for plaintiff and the SBA. As noted by the court in *Chelsea,* the ASPRs specifically permitted assignment and *reassignment:*

> [C]laims for monies due or to become due the contractor from the Government under this contract may be assigned to a bank, trust company, or other financing institution * * * and *may be thereafter further assigned and reassigned* to such institution. [ASPR, ¶ 7–103.8, *supra,* (emphasis added)].

Plaintiff may sue as beneficiary because it meets the conditions to valid assignment imposed by the ASPRs and the Act. The main conditions contained in the Act are that: (1) the contract payments aggregate $1000 or more; (2) the assignee must be a bank, trust company or other financing institution; (3) only one party is the legal assignee; and (4) the assignee has participated in the financing of Government contracts.[11] Such conditions *are met* in the instant case. The technical manual contract provided for payments in excess of $1000, all assignees (both legal and beneficial) are banks or financing institutions, and only one party (Franklin) acted as trustee for other assignees. We shall later see that plaintiff also meets the prerequisite of having participated in the financing.[12]

In short, plaintiff has standing to sue as beneficiary of the 1967 assignment of the contract by virtue of Franklin's 1971 reassignment to plaintiff of its beneficial interests in the technical manual contract proceeds.

## B. Plaintiff as Subrogee

Plaintiff also has standing to assert any rights held by Franklin with respect to the contract, as *subrogee.*

As a general rule, subrogation applies where a party "not acting voluntarily, but under some compulsion" pays a debt or discharges an obligation for which another is primarily liable and which "in equity and good conscience ought to be discharged by the latter." *See, e. g., Compania Anonima Venezolana de Navegacion v. A. J. Perez Export Co.,* 303 F.2d 692, 697 (5th Cir. 1962). In such circumstances, the subrogee "stands in the place" of the original creditor and obtains equivalent but no greater rights against the debtor than held by the original creditor. *United States v. Munsey Trust Co.,* 332 U.S. 234, 242, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947).

Before the 1940 amendments to the Assignment of Claims Act, courts would not apply the doctrine of subrogation against the Government in contract actions. *Munsey Trust, supra.* The basis for such action rested on the fact that assignments of claims against the United States were forbidden. To apply subrogation would have defeated the purpose of the anti-assignment Act. However, with passage of the amendments to the Act in 1940, so long as conditions to assignment (discussed *supra*) are met, there should be no bar to application of the doctrine of subrogation against defendant.

As previously discussed, the conditions on assignment have been fulfilled in the instant case.[13] The contract called for payments in excess of $1000; plaintiff is a bank; Franklin acted as sole legal assignee, and plaintiff participated in the financing of Trilon's Government contracts. Thus, insofar as plaintiff advanced funds to

---

**10.** In fact, on the advice of the SBA, Franklin specifically declined to release its legal assignment and continued to act as trustee or disbursing agent.

**11.** To prevent multiple claims on the same contract and avoid multiplicity of actions. *See, e. g., Consumers Ice Co., supra.*

**12.** *See* Part VI, *supra.*

**13.** *See* notes 10–12, *supra,* and accompanying text.

Franklin in the 1971 refinancing, plaintiff is entitled to be subrogated to Franklin's rights with regard to the technical manual contract. The GAO so held (although limited the extent of the subrogation to the $7,812 cash payment) when it concluded:

First National City may, in essence, have obtained for its $7812 the same but no greater rights than Franklin itself possessed under the Trilon assignment—essentially the right to payment of nearly $8,000, without any set-off. [Comp.Gen. Dec., B–180271, *supra* at 6].

■ But defendant says that plaintiff is not subrogated to Franklin's rights because it is a mere volunteer. We agree that a volunteer may not obtain any subrogation rights. Payment of the debt must result from some compulsion. *Prairie State Bank v. United States*, 164 U.S. 227, 231, 17 S.Ct. 142, 41 L.Ed. 412 (1896); *Aetna Life Ins. Co. v. Middleport*, 124 U.S. 534, 549, 8 S.Ct. 625, 31 L.Ed. 537 (1888); *Anderson v. United States*, 97 Ct.Cl. 545, 550 (1942). However, defendant forgets that subrogation will be applied in favor of parties who act to protect their own interests. One who pays another's debt to protect his own rights and interests is not ordinarily considered a volunteer and may be subrogated to the creditor's rights. *Federal Deposit Insurance Corp. v. American Surety Co.*, 39 F.Supp. 551 (W.D.Ky.1941). *See also Nippolt v. Farmers' & Merchants' State Bank*, 186 Minn. 325, 243 N.W. 136 (1932) (Bank agreed to pay mortgage to protect other security interests held entitled to assignment of note and mortgage).

■ Clearly, plaintiff did not pay Trilon's debt as a volunteer but did so to protect its own interests in the prior loans made to Trilon. Both Franklin and Trilon faced severe economic difficulties in 1971. Franklin had called its loans to Trilon and had threatened to call the SBA's. If Franklin had persisted, Trilon might have been forced into receivership or bankruptcy, endangering plaintiff's loans to Trilon. Plaintiff was no volunteer.

Thus we agree with the GAO that plaintiff as subrogee acquired standing to assert Franklin's rights against defendant, although we shall discuss in Part V, *infra*, why we disagree with the GAO's interpretation of the scope of such rights.[14]

### C. Proper Party Plaintiff

■ Having determined that plaintiff has standing to bring the instant action either as beneficiary or as subrogee, we turn to defendant's contention that plaintiff has no capacity to bring the present suit in its own name. Although agreeing that plaintiff is the real party in interest in this matter, defendant claims that Government consent is needed for substitution of the real party in interest as plaintiff in suits under the Assignment of Claims Act. It cites *Consumers Ice Co., supra*, and *Beaconwear Clothing Co. v. United States*, 174 Ct.Cl. 40, 355 F.2d 583 (1966), for this proposition. Because, defendant says, such consent has never been given, plaintiff lacks capacity to bring this action. For several reasons we cannot accept defendant's views and hold that plaintiff is entitled to bring the instant action in its own name.[15]

First, neither *Consumers* nor *Beaconwear* mandates the requirement that an assignee under the Assignment of Claims Act obtain Government approval in order to bring an action in its own name.

In *Beaconwear*, a subcontractor-reassignee attempted to gain the benefit of the

---

**14.** We reject the Government's contention that allowing plaintiff standing to sue as subrogee would permit an equitable right (subrogation) to override the statutory requirements of the Act. Our holding that subrogation may be applied against defendant only extends to the situation where strict conditions contained in the Act are otherwise met.

**15.** We address defendant's capacity argument despite the fact that it has not been properly raised. Ct.Cl. Rule 33(a) provides that a plaintiff need not allege its capacity to sue. However, if defendant wishes to question the plaintiff's capacity, it must do so "by specific negative averment." Defendant's answer in the present action fails to raise an issue as to plaintiff's capacity to sue in its own name. Therefore, defendant's attack on plaintiff's capacity in the summary judgment motion is improper.

set-off protections of the Act despite the fact that he was not a financing institution and had not participated in the financing of any of the assignor's Government contracts. The court held that the defendant had not waived its objections to plaintiff's use of the set-off protections because the Contracting Officer had not received *notice* of the reassignment to the subcontractor. Moreover, it was further held that the subcontractor could not sue in its own name as a prime contractor because it had no privity with the Government, and had not been dealt with directly by defendant. The consent requirement in *Beaconwear*, if any, relates to the contractor-Government relationship, not to the Assignment of Claims Act.

Although defendant's consent requirement would seem at first glance to be bolstered by *Consumers*, a close analysis proves such a view to be erroneous. In that case, the plaintiff's counsel, *not the court or the Government*, agreed that in a suit under the Act, the real party in interest could only be substituted as plaintiff with the consent of defendant.

> Plaintiff concedes that Texas International Company [the real party in interest] cannot be substituted as plaintiff without consent of the United States because of the Assignment of Claims Act, 31 U.S.C. § 203 (1970). On the latter point, defendant has been silent. [*Consumers, supra*, 201 Ct.Cl. at 119, 475 F.2d at 1163].

In fact, the court appears to disagree with this legal stipulation by Consumers' attorney, although it refused to rule on the question:

> There are various exceptions to this Act [including rights created] by operation of law * * * [T]his appears to be the situation here. The purposes of the Act, often stated, to prevent fraud, to avoid multiple litigation, and to protect the defenses the United States may have against the assignor by way of setoff and counterclaim, would not appear to be violated by substitution of Texas International Company as plaintiff and the real party in interest. *However, it is not necessary to decide this issue now * * ** [*Id.*, 201 Ct.Cl. at 119–20, 475 F.2d at 1163 (emphasis added)].

Neither *Beaconwear* nor *Consumers* stands for the proposition that defendant must consent to the assignee or reassignee's suit under the Assignment of Claims Act before the assignee or reassignee may bring the action in its own name as proper party plaintiff. In fact, there is precedent to the contrary. In *Chelsea Factors, supra*, a reassignee brought suit in its own name to recover on the contract. It did not appear that defendant consented to Chelsea's maintenance of the action.[16] The court held that plaintiff could sue in its own name under a belated legal reassignment without discussing any consent requirement. *Id.*, 149 Ct.Cl. at 214, 181 F.Supp. at 692.

Beyond the fact that the case law does not support defendant's consent requirement, a second reason exists for denying the Government's capacity argument. As noted in *Consumers, supra*, courts have developed exceptions to the Assignment of Claims Act, permitting the real party in interest to bring suit against the Government where the interest has devolved by operation of law. *Webster Factors, Inc. v. United States*, 193 Ct.Cl. 892, 900–01, 436 F.2d 425, 429 (1971); *Patterson v. United States*, 173 Ct.Cl. 819, 823, 354 F.2d 327, 329 (1965). Such transfers include suits by *subrogees*, *United States v. Aetna Casualty & Surety Co.*, 338 U.S. 366, 70 S.Ct. 207, 94 L.Ed. 171 (1949), and bankruptcy trustees, *McKay v. United States*, 27 Ct.Cl. 422 (1892).

■ Of manifest importance in determining if the real party in interest will be permitted to bring an action under the Act is whether such practice would encourage a violation of the Act's policy "primarily to prevent fraud; and secondarily, to avoid

---

16. In fact, rather than give its consent the Government argued that plaintiff could not sue because it had never given notice of the reassignment. The court rejected this argument and held that notice of a prior assignment to another party was sufficient.

multiple litigation." *Webster, supra,* 193 Ct.Cl. at 900, 436 F.2d at 429; *Patterson, supra,* 173 Ct.Cl. at 823, 354 F.2d at 329. It is clear that such policy will not be violated by permitting plaintiff to maintain the present suit. The claims upon which plaintiff sues developed either from the beneficiary or subrogee role. The cases cited above permit this action, without defendant's consent, in the name of plaintiff. Defendant makes no allegations of fraud. Other participants to the financing (Franklin, Trilon, and the SBA) have eschewed any interest in the proceeds at issue here.[17]

█ Thus based upon these policy considerations, under the facts of this case plaintiff may sue in its own name without defendant's consent.

Third, adoption of defendant's consent requirement would, in effect, create an exception to Ct.Cl. Rule 61(a) based on the Assignment of Claims Act. Rule 61(a) specifies the general rule that actions in this court be brought by the real party in interest.

> *Every action shall be prosecuted in the name of the real party in interest;* but an executor, administrator, guardian, trustee of an express trust * * * or other representative appointed by a judicial tribunal, or a party authorized by statute, *may sue* in his own name without joining with him the party for whose benefit the action is brought. [Ct.Cl. Rule 61(a) (emphasis added)].

Defendant does not dispute the fact that plaintiff is the real party in interest. Instead it contends that under the Act, Government consent is necessary before an assignee can sue in its own name. The Act contains no such express requirement and, as discussed above, defendant cites no legislative history or case law to this effect. In stark contrast is the strong policy behind Rule 61(a) that actions be brought in the name of the real party in interest. Defendant simply produces no basis for implying a consent requirement as an exception to this rule in Assignment of Claims Act cases.

Finally, even if defendant's consent were required in order to permit plaintiff to bring the present action in its own name, we would still find that this action is proper. Although defendant has never expressly consented, the Government's course of conduct demonstrates that consent has impliedly been given. Defendant has consistently treated plaintiff as the proper party in this action. While Trilon and Franklin were experiencing financial difficulties, defendant was quite happy to have plaintiff bolster them so that work could continue on Government contracts. Although defendant never specifically consented to the reassignment to plaintiff, neither did it disapprove. Later, when the technical manual contract dispute was resolved, defendant sent a copy of its agreement *not to Franklin or the SBA but to plaintiff.* When concurrence could not be reached on plaintiff's entitlement to the proceeds, defendant submitted the problem to the GAO. Plaintiff, not Franklin or the SBA, appeared before the GAO.

Defendant's conduct amply demonstrates that it has consented.

We hold that plaintiff has standing to bring the instant action, either as beneficiary of the 1967 assignment from Trilon to Franklin or as subrogee of Franklin pursuant to the 1971 refinancing. We further conclude that plaintiff has capacity to bring the instant suit in its own name. Now, the

---

17. Franklin's successors have declined to appear in this action. *See* note 7, *supra.* Trilon has assigned its interest to plaintiff, and the SBA has subrogated any of its claims,

Note also that another purpose of the Act, to preserve the Government's set-offs and counterclaims against the contractor, while not considered of major importance in *Webster* and *Patterson*, is not violated by allowing plaintiff to bring the instant action in its own name. Plaintiff's rights here are obtained derivatively from Franklin. Defendant has already relinquished its set-off and counterclaim defenses against Trilon by assenting to the Franklin assignment. There is no further erosion of defendant's rights in allowing plaintiff to step into the shoes of Franklin. Indeed, if the philosophy of the amendments, to encourage the financing of Government contracts, is to be furthered, proper reassignments must permit the reassignees to bring actions against defendant.

extent of plaintiff's derivative rights, as beneficiary or subrogee, must be determined.

## V

### Scope of Plaintiff's Rights

Even if plaintiff has standing to sue in its own name, defendant argues, it cannot recover because it has no greater rights than Franklin. Defendant reasons that Trilon's debt to Franklin has been discharged in full and plaintiff can recover nothing. Defendant's derivative rights approach is correct, but it errs in the proposed application to the facts of this case. We hold that plaintiff is entitled to recover the entire $54,369.37 as beneficiary or as subrogee.

Defendant's initial observation is accurate. Plaintiff can obtain no greater rights than those possessed by Franklin. This is true where plaintiff sues as subrogee. "A subrogee stands in the shoes of the subrogor and has no better rights than possessed by the latter." *Berkeley v. United States*, 149 Ct.Cl. 549, 555, 276 F.2d 9, 12 (1960). *See also, United States v. Munsey Trust Co.*, 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947); *Phoenix Insurance Co. v. Erie & Western Transportation Co.*, 117 U.S. 312, 321, 6 S.Ct. 750, 29 L.Ed. 873 (1886). It is equally valid where plaintiff sues as beneficiary:

> Since the Bank's [the reassignor's] debt has been discharged in full, it no longer has a valid claim against the United States either for itself or as a trustee for Spiotta [the reassignee] who, in any event, would have no greater rights than the Bank possesses under the first assignment. [*Beaconwear Clothing Co., supra*, 174 Ct.Cl. at 52, 355 F.2d at 590].

Using this logic, defendant argues that Franklin has been discharged in full by plaintiff's 1971 refinancing. Defendant says Franklin could not recover from the Government and neither can plaintiff.

Defendant misconstrues the meaning of "discharge" and the nature of the subrogation or beneficiary role. At the time of the 1971 refinancing Trilon still owed Franklin $52,812. Plaintiff paid Franklin this amount by releasing a $45,000 check upon which it held a prior lien and by giving Franklin $7,812 in cash. Defendant says this transaction "discharged Franklin." We decline to follow such an interpretation.

Were we to adopt the concept of discharge urged by defendant we would obliterate the doctrine of subrogation. As previously discussed, subrogation is applied where a party "not acting voluntarily, but under some compulsion" pays a debt or discharges an obligation for which another is primarily liable and which "in equity and good conscience [ought to be] discharged by the latter." *Compania Anonima, supra.* Yet by defendant's definition, anytime a third party paid a creditor on behalf of the debtor, the creditor would be discharged and the subrogee would have no rights against the debtor. In other words, defendant's "catch-22" argument would have us read the law of subrogation out of the books. Clearly, such an approach is erroneous, and we decline to follow it.

■ The GAO decision itself rejected defendant's "discharge" approach, at least with regard to the $7,812 cash payment made by plaintiff to Franklin. The GAO properly pointed out that defendant was a stranger to the 1971 refinancing. Thus, the Government's liability on the technical manual contract was not discharged by any payments made by plaintiff to Franklin. Comp.Gen.Dec. B–18027, *supra* at 6. Although as we shall discuss *infra*, the GAO, like defendant, partially misinterpreted the scope of the rights transferred to plaintiff; it correctly declined to hold that plaintiff's payment to Franklin discharged the debt as far as defendant was concerned.

Alternatively, defendant argues that even if there was no 1971 discharge, the Government is not liable to plaintiff for any additional sums (other than the $7,812 awarded by the GAO) because the total extent of plaintiff's derivative rights was correctly determined by the GAO. For two key reasons this contention cannot be upheld. The GAO erroneously limited plaintiff's recovery.

First, plaintiff is at least entitled to an additional recovery based on the $45,000 check which plaintiff released during the 1971 refinancing. The GAO failed to deal with the issue of the check. Defendant says plaintiff's release of the check constituted a payment by Trilon to Franklin and Franklin was discharged to the extent of $45,000. To support this contention defendant cites the proposition that payment by a third party of a debt using funds of the debtor is equivalent to payment by the debtor, not the third party:

> Payment in a legal sense relates to a debt or an obligation of the party who pays. Payment may be made by the debtor or by another in his behalf. If it is paid by another, but with the debtor's money, it is payment by the debtor. [*Krichbaum v. United States*, 138 F.Supp. 515, 518 (E.D. Tenn.1956)].

The check at issue here was drawn by Trilon, payable to Franklin, with plaintiff as payor bank. According to defendant, plaintiff's release of the check (by paying Franklin the $45,000) was payment by a third party (plaintiff) of a debt (to Franklin) using the debtor's (Trilon's) funds.

Defendant ignores one crucial fact. Plaintiff held a prior claim to the $45,000 based upon its right of set-off:

> * * * [T]he right of a bank to a lien against money deposited with it and the right to set off a deposit against the depositor's indebtedness to the bank are part of the law merchant * * *. [*Kaufman v. First National Bank*, 493 F.2d 1070, 1071 (5th Cir. 1974) (citation omitted)].

In short, plaintiff held the check subject to its right to set-off the loans previously made to Trilon. Trilon could not demand that plaintiff pay this sum over to Franklin. When plaintiff paid the $45,000 it did so, in effect, not with Trilon's money *but with its own*. Plaintiff's release of the check constituted a transfer of a property right worth $45,000 to Franklin in partial consideration for the reassignment of technical manual contract rights. Plaintiff received Franklin's claims against defendant not limited to the $7,812 but at least for $52,812. Plaintiff is entitled to recover at least an additional $45,000 in the instant action.

Second, beyond the question of the $45,000 check, plaintiff may recover the entire $54,369.37 based upon a right which both defendant and the GAO have apparently ignored. This is the right to advance funds under a revolving credit agreement, thereby extending defendant's duty to pay without regard to set-offs.

In the 1967 assignment Franklin received the right to collect amounts due under the technical manual contract free of defendant's set-offs. More important, Franklin also obtained a capacity to make additional loans to Trilon and extend the set-off protections contained in the technical manual contract. As stated by the court in *Continental Bank & Trust Co. v. United States*, 189 Ct.Cl. 99, 416 F.2d 1296 (1969):

> * * * [D]efendant resorts to the contention that the set-off is permissible in this instance [where the specific funds due on the contract had been repaid], since under the common law of assignments, plaintiff's interest in the assigned collateral ceased when the loan made for the performance of the contract was repaid. * * *. This argument ignores the modern trend away from tying particular loans to particular security. Furthermore, the adoption of such a rule for the statutory assignment involved here would impair the familiar revolving credit financing device to which Congress referred when deleting the previously discussed set-off and reduction limitation provision from the 1951 amendments to the Act * * * [*Continental Bank, supra*, 189 Ct.Cl. at 108–9, 416 F.2d at 1302].

Franklin obtained the right, in the 1967 assignment to make additional loans to Trilon and receive, free of defendant's independent set-off claims, funds from the technical manual contract beyond the payments specifically required.[18]

---

**18.** Plaintiff and defendant disagree as to whether Franklin actually exercised such a right. Plaintiff alleges in its complaint that

Franklin extended additional loans to Trilon in 1969. Defendant denies this allegation.

▇ When plaintiff paid Franklin the $52,812 and received Franklin's rights it also obtained the right to advance more funds to Trilon and receive additional set-off protection encompassing extra amounts awarded under the technical manual contract. It is the nature of this right which compels the conclusion that plaintiff is entitled to recover the $54,369.47 free of defendant's set-offs.

As stated above, Congress, as part of its motives in enacting the Act's amendments, desired to encourage the revolving credit device.

The 1940 Amendment to the Assignment of Claims Act was intended to facilitate the financing of Government contracts by private capital in the way in which private capital normally operates in financing the country's economy. [*Chelsea Factors, supra,* 149 Ct.Cl. at 210, 181 F.Supp. at 690].

Therefore, since plaintiff as subrogee or beneficiary obtained Franklin's right from the initial 1967 assignment, and since such rights related back, the scope of plaintiff's derivative rights against defendant is not limited to a set-off free recovery of the $7,812 cash payment. Nor is plaintiff limited to the $52,812 payment (cash plus the $45,000 check release). Plaintiff's right to recover free of defendant's set-offs extends to all loans to Trilon made in furtherance of Government contracts: somewhere in excess of $250,000. Therefore, plaintiff is entitled to recover the $54,369.37 at issue here.

## VI

### *Participation in the Financing:*

Relying on the condition contained in the Act, that the assignee have "participated in the financing of Government contracts," defendant argues that plaintiff cannot obtain the benefits of the no set-off protections because it did not participate in the financing of the technical manual contract. This time, not only is defendant's application unsound, so is its theory.

In order to qualify under the Act for set-off protection, all conditions placed on assignments must be met. Under one such requirement, the assignee must have participated in the financing of Government contracts:

[A]ny such assignment may be made to one party as agent or trustee for two or more parties *participating in such financing.* [31 U.S.C. § 203, *supra*; 41 U.S.C. § 15, *supra* (emphasis added)].

The theory underlying this condition was well stated in *Coleman, supra.*

The Act was designed to make funds available to a government contractor with which he could *complete his contract.* If the loan is used for another purpose, the objectives of the Act are not satisfied. [*Coleman, supra,* 158 Ct.Cl. at 495–96 (emphasis added)].

Defendant says plaintiff could not possibly have participated in the financing of the technical manual contract because performance on the contract had been completed by the time plaintiff entered the scene.

In order to evaluate defendant's contention, we must formulate the proper test for determining the extent of plaintiff's financial participation in Trilon's Government contract ventures. Defendant would have the court adopt the "single loan method." Under such a test, the court would determine whether particular loan proceeds are used to complete a specific Government contract, the proceeds of which have been assigned to the lender. However, defendant ignores crucial features of the Act and the ASPRs.

As discussed above, one legislative purpose in amending the Act was to encourage the revolving credit device. In order to promote this philosophy, Congress rejected proposals which would have tied particular loans to particular contracts. *See Continental Bank, supra.* Yet this is precisely the test defendant would have us adopt to determine whether a lender has "participated in the financing." Obviously, we cannot give credence to defendant's suggestion.

■ By a proper test the objectives of the Act, to provide funds for completion of Government contracts *and* to encourage revolving credit by avoiding tying particular loans to particular contracts, can both be achieved. Such a test measures whether plaintiff advanced funds in return for payment rights *on a number of Government contracts, some of which are in process.* In other words, the overall benefit to the Government must be assessed, rather than a particular benefit arising from completion of a particular contract.

Moreover, the *form* of the financing arrangement is not crucial. There are two possible situations where the Government benefits from the actions of a lender. In the first instance, the lender advances funds *directly* to a contractor to permit completion of Government contracts. Clearly, the lender has participated in the financing. The second instance is more subtle. Here the lender advances funds to a creditor of the contractor to prevent a reduction of the contractor's working capital employed in the completion of Government contracts. This second arrangement is more complex, but the net benefit to the Government is the same. In the first situation, the contractor has received funds to assist him in completing his Government contracts. In the second instance, the lender's action in forestalling creditors who would drain the contractor of funds, equally operates in aiding the contractor in the completion of Government contract work.

Applying this theory to the instant case, plaintiff meets the "participation in the financing" requirement. Initially, plaintiff participated in the financing of *other ongoing* Trilon Government contracts despite the fact that the technical manual contract had been completed before plaintiff's entry on the scene. Therefore, under the test we have formulated, plaintiff meets the "participation in the financing" requirement, although it did not finance the technical manual contract. Moreover, with respect to the *amount* of such participation, plaintiff's activities more than encompassed the funds at issue in the present action.

■ First, plaintiff's participation extended *at least* as far as the sums loaned pursuant to the refinancing. At the time plaintiff entered into the refinancing arrangement, Franklin had called the loans to Trilon. Trilon's sole business was directed toward Government contract work. If Trilon had been forced to pay its $52,812 debt, these funds (if available at all) would have been withdrawn from Government contract projects. When plaintiff paid Franklin the $52,812, it was as effectively assisting Trilon's completion of the Government contracts as the sums had been directly advanced after a Trilon loan repayment to Franklin. Plaintiff meets the "participation in the financing" requirement *at least* in the amount of the funds paid pursuant to the refinancing.

Second, and more important, plaintiff had already advanced more than $250,000 directly to Trilon in prior years to assist completion of Government contracts. Presumably plaintiff had a right to call these loans at any time. Trilon, both at the time of the $250,000 loan and later up through the refinancing, was engaged in Government contract work. Therefore, we again must look, not to a single contract, but to the overall Government benefit in ascertaining whether or not plaintiff's loans to Trilon *before* the refinancing operate to meet the "participation in the financing" requirement.

■ It is clear that by the time of the refinancing, Trilon was in financial difficulties. Having loaned over $250,000 to Trilon, plaintiff stood in a position to foreclose its loans. In such event, Trilon's Government contract work might have been halted. In such a situation, the goal of the Act, to encourage completion of Government contracts, would have been thwarted. Therefore, in order to effectuate the purposes of the Act, we hold that the "participation in the financing" requirement is met not only to the extent of funds advanced at the time of a given assignment or reassignment, but also in the amount of funds previously furnished to assist completion of Government contracts. In the case at bar,

plaintiff meets the "participation" condition, both with respect to the $52,812 loaned during the refinancing *and also* from the prior advancements exceeding $250,000.

Plaintiff may use the set-off protections on the entire $54,369.37 at issue in the instant action because it meets the test for having participated in the financing of Government contracts in an amount far exceeding the sums at issue here.

## VII

### Government Contract Financing:

We have repeatedly emphasized throughout this opinion that the set-off protection provisions of the Act and the ASPRs must be interpreted in a manner to effectuate the overall purpose of Congress:

> [T]o facilitate the financing of Government contracts by private capital in the way in which private capital normally operates in financing the country's economy. [*Chelsea Factors, supra,* 149 Ct.Cl. at 210, 181 F.Supp. at 690].

Plaintiff argues, and we agree, that any other result than the one we have reached in the instant case would detract from this goal.

█ In its reply brief, plaintiff illustrates a five-chambered house of horrors which it claims would result from a decision in defendant's favor.[19] Defendant fails to answer plaintiff's argument, saying that each case must be decided on its own merits. While, of course, each case is confined to its particular facts, this does not mean that the court is forced to put on blinders.

A key factor in any decision is the potential ramification of the result. A court must be particularly cognizant of the implications of a given case in the situation where it is confronted with clear evidence of legislative intent and must formulate an application of the statute which furthers such Congressional purpose.

In the present action we have construed the amendments to the Assignment of Claims Act to give effect to the intent of Congress. Our construction should facilitate the financing of Government contracts by encouraging investment of private capital in a normal manner. Any holding involving the instant facts could do no less.

## VIII

### Interest:

In addition to its claim for $54,369.37 free of defendant's set-offs, plaintiff's petition seeks recovery of accrued interest. Defendant counters that if plaintiff's recovery is based on subrogation, we cannot award interest to plaintiff because Franklin's right to receive interest terminated at the time of the refinancing.[20] However, neither plaintiff nor defendant focus on the interest question in any detail in their arguments.

█ Initially, we note that plaintiff is not entitled to recover interest on a claim against the Government absent a showing that it held a right to collect interest under a statute or contract so providing. This requirement is based both on statutes and case law. 28 U.S.C. § 2516 provides:

---

**19.** Plaintiff gives five vivid examples of situations which would result from a decision in defendant's favor. In such instances, financing of Government contracts would *not* operate in a normal manner. A good example is plaintiff's second illustration.

[A] Government contractor has a number of Government supply contracts which provide a regular, steady income. It has just entered into an agreement with the Government which will require it to construct a plant * * *. [Under defendant's arguments in the instant case] it may not pledge the equity in the * * * supply contracts * * * in order to raise the money for necessary expenditures on the * * * new Government contract.

> Thus defendant's narrow interpretation of the Act which would lead to the situation given in plaintiff's example would not allow for financing of Government contracts in the manner in which private capital normally operates. Such a result would certainly conflict with Congressional intent in passing the amendments to the Act.

**20.** Defendant fails to discuss the question of an interest award in the event we hold for plaintiff as a beneficial reassignee. We assume that since plaintiff's rights to receive interest are equally derivative, either as a beneficiary or as a subrogee, its entitlement to interest would be the same in either event.

Interest on a claim against the United States shall be allowed in a judgment of the Court of Claims only under a contract or Act of Congress expressly providing for payment thereof. [28 U.S.C. § 2516(a) (1970)].

*See also* Judge Skelton's excellent analysis of Supreme Court and Court of Claims decisions in *United States v. Mescalero Apache Tribe*, 207 Ct.Cl. 369, 518 F.2d 1309 (1975), *cert. denied*, 425 U.S. 911, 96 S.Ct. 1506, 47 L.Ed.2d 761 (1976).

In the instant case plaintiff has cited no statute or contract provision which would entitle it to interest on a judgment in its favor. Normally, we would be forced to deny such interest claims. However, defendant seems to concede that Franklin held a right to receive interest on the technical manual contract proceeds. It says that such right terminated at the time of the refinancing. Unhappily, we do not have the specific provisions of the technical manual contract before the court, other than those dealing with the assignments.

■■■ As discussed in Parts IV and V, *supra*, plaintiff has succeeded to Franklin's rights against defendant. Such derivative rights are not obliterated by the fact that plaintiff paid Franklin during the refinancing. *See* Part V, *supra*. Thus if Franklin held a right to receive interest, plaintiff would step into Franklin's shoes and would be entitled to recover interest in the present action. The only problem is that from the present state of the record we cannot ascertain Franklin's rights to obtain interest under the technical manual contract. Where the evidence before the court is not meaningfully correlated to an ultimate issue in the case, summary judgment cannot be granted on such issue and a remand to the trial judge for further proceedings is required. *Cheyenne-Arapaho Tribes v. United States*, 206 Ct.Cl. 340, 353, 512 F.2d 1390, 1397 (1975).

■■■ Accordingly, we must remand the issue of interest to the trial judge for a determination of plaintiff's derivative entitlement based on rights held by Franklin. Should it appear from additional evidence that Franklin could recover interest on the technical manual contract proceeds, plaintiff will be entitled to receive interest on the instant claims, either as beneficiary or as subrogee.

In summary, plaintiff comes before the court seeking to recover $54,369.37 (plus interest) free of defendant's independent set-off claims as assignee of certain Government contract rights. Plaintiff has standing to use the set-off protection provisions of the Assignment of Claims Act, the ASPRs and the contract because it may sue on the contract at issue, either as beneficiary of a 1971 refinancing transaction or as subrogee of the original contract assignee (Part IV). Plaintiff's entitlement to the set-off protections extends to encompass the entire $54,369.37 at issue (Part V). Plaintiff may use the protections because it has effectively participated in the financing of Government contracts (Part VI). Finally, our construction of the Act is in complete accord with the intent of Congress to promote the financing of Government contracts (Part VII). We remand the interest issue to the trial judge in order to receive additional evidence (Part VIII). Our decision will, of necessity, cost defendant at least $54,369.37 in the instant case. However, the enhancement to competitive bidding which should result from an additional availability of capital should prove to create a far greater Government savings in the years to come.

Accordingly, for the reasons stated above, plaintiff's motion for summary judgment is granted in part and denied in part and defendant's cross-motion for summary judgment is denied. Plaintiff is entitled to recover $54,369.37 free of defendant's independent set-offs and judgment is entered to that effect. The interest issue is remanded to the Trial Division for further proceedings consistent with this opinion.

DAVIS, Judge (concurring in part and dissenting in part):

I slice this case differently. Although my result in figures is not too far from the

court's, I reject the over-broad reading of "participating in such financing" in the Assignment of Claims Act of 1940 (see Part VI of the court's opinion), and would confine that concept to a lender whose loan was used, or was available for use, in financing the particular government contract under which suit is brought. Admittedly, the plaintiff's loan to Trilon was not used and was not available—and could not be— for the technical manuals contract on which this suit is founded since that agreement was fully performed about a year (1968) before First National City Bank even undertook to finance Trilon (1969).[1]

I reach this interpretation on both the text and the purpose of the statute. The 1940 Assignment of Claims Act is entirely written in terms of a single government contract which is being financed by a lender or group of lenders, not in the government-wide terms of which the court speaks. The statutory concept is that of financing a specific government contract, not of the financing of government contracts in general or across-the-board, or the financing of all of a contractor's contracts as a lump. The immediate context of the phrase "participating in such financing" relates to the financing of the particular contract on which the statutory provision centers; grammatically and naturally, "such" refers back to the financing of that particular contract and "financing" likewise refers to the financing of that individual contract, not other contracts of the same contractor or contracts generally. It is, of course, too much of a strain to think of plaintiff as financing the technical manuals contract, all the work on which was done and finished a year before First National came into Trilon's world.[2]

The objective of the 1940 Act was to authorize the financing of individual government contracts in the sense that

Congress wished the holder of such a pact to be free to receive financial help in performing his agreement in reliance on the security of the expected government payments from that contract. At the same time Congress did not, I think, wish to eat into the Government's normal right of set-off against the assignor more than would be necessary to induce such monetary aid in performing. Where a contract has been fully completed, further aid is not needed for that contract and there is no occasion to give up the right of setoff. "The Act was designed to make funds available to a contractor with which he could *complete his government contract.* If the loan is used for another purpose [here, that must be so since Trilon had already completed the technical manuals contract], the objectives of the Act are not satisfied." *Coleman v. United States,* 158 Ct.Cl. 490, 496 (1962) (emphasis added).

This view does not mean that loans must be tied to particular contracts nor does it go counter to the endorsement of the revolving-credit plan in *Continental Bank & Trust Co. v. United States,* 189 Ct.Cl. 99, 416 F.2d 1296 (1969). In all of our prior cases, including *Continental Bank,* which have upheld the financing institutions' right to recover free of setoffs, the loans were made before the completion of the particular contract and were available to help in the performance of that work—even though the loans may not have been tied to, or designated as directed to, a or the specific contract. The same is true of the "five-chambered house of horrors" plaintiff has included in its brief; with the exception of one-half of one of the five examples, in all those situations the loan is and can be available for all non-completed government contracts of that contractor-borrower, and therefore the financial institution can avail itself of the right of recovery free of setoff. It is only where the contract has been fully

---

1. First National had nothing to do with the technical manuals contract until September 1971 when it paid off Franklin which had an assignment of the proceeds of the contract.

2. The contract clause in the technical manuals agreement and the ASPR regulations do not deviate from the statute.

performed before the loan is made[3] that the institution cannot call upon that right under that particular contract. The reach of that rule would thus not be nearly as wide as the court and plaintiff assert. On the other hand, it should be noted that the court's broader view would allow a setoff-free recovery by plaintiff under the technical manuals contract even though that bank had refused to pay Franklin off in 1971, and although the contract had been fully performed a decade before First National had any dealings with Trilon.[4]

For these reasons, I would hold that plaintiff does not belong within the class of those "participating in such financing" under the 1940 Act. Nor is the First National Bank a proper reassignee under the Act and the contract clause. Franklin refused in 1971 to release its own prior assignment and on that ground the Government would not accept the attempted reassignment to First National. If one thing is clear under the statute and the clause, it is that, with respect to any individual contract, there can be only one assignee at a time (with the exception, which as shown above I consider inapplicable, of other parties "participating in such financing"). Since Franklin insisted on retaining its own assignment, plaintiff could not take over directly under the Act.

All this leads me to conclude that First National has no claim under the Assignment of Claims Act of 1940. But plaintiff also puts itself forward, apart from that statute, as the subrogee of Franklin which it paid off in 1971. To the extent of the payments made by plaintiff to Franklin at that time, I agree with the court, partly for the reasons it gives, that First National was subrogated to Franklin's rights under the latter's assignment. Plaintiff was not a volunteer and it succeeded to those rights Franklin would have had if it had not been paid off. As the court shows, the general principles of "common-law subrogation" are met.

Defendant's response is that to recognize subrogation here would subvert the limitations of the old anti-assignment part of the Assignment of Claims Act. The majority counter this suggestion by finding that the conditions of the 1940 Act are themselves satisfied. I cannot take that road since I believe, as discussed above, that plaintiff is unable to shield itself under the coverage of the 1940 legislation. But I find my answer in the proposition that, on the facts here, there is no contradiction of the aims of the original, historic anti-assignment law in allowing this plaintiff to recover as subrogee. The statutory purposes of that old legislation are to prevent fraud, control multiple litigation, and confine the government's dealings to a very limited number of persons or entities. In this particular instance, the Government, before the suit was brought, had already elected to deal with plaintiff with respect to the technical manuals contract. As the court's opinion points out, defendant sent a copy of the agreement resolving the dispute (over additional compensation on the technical manuals contract) not to Franklin or the Small Business Administration but to plaintiff; the defendant also haggled with plaintiff over whether the latter should have priority before any setoff; and the GAO appears in effect to have determined that First National was at least entitled to $7,812 without any setoff. Thus, by its own choice defendant treated First National as an interested party. Where that has happened it seems to me an unwholesome technical rigidity to apply the principles underlying the pre-1940 anti-assignment statute to lock the barn after the horse has deliberately been let out by the Government's own officials.

I would therefore allow plaintiff to recover that part of the monies it paid to Franklin in 1971 which it has not yet recovered. On the interest issue, I agree with the court.

---

3. And perhaps where the loan agreement explicitly forbids use of the loan on a specific contract.

4. Unfortunately, it is not unknown that claims under a contract take ten years or more to proceed through the administrative and judicial processes.