**E. Harold PATTERSON, Receiver for the Electro Nuclear Systems Corporation**

v.

**The UNITED STATES, NORTHWESTERN NATIONAL BANK OF MINNEAPOLIS, Third-Party Defendant.**

**No. 320–63.**

United States Court of Claims.

Dec. 17, 1965.

Joseph A. Mattingly, Leonardtown, Md., for plaintiff.

Edward Weintraub, Washington, D. C., with whom was Asst. Atty. Gen. John W. Douglas, for defendant.

James A. Halls, Minneapolis, Minn., for third-party defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

COWEN, Chief Judge.

In this case, now before the court on cross-motions for summary judgment, plaintiff E. Harold Patterson, as receiver for the Electro Nuclear Systems Corporation of Minneapolis, Minnesota, seeks to recover the sum of $3,700 from the United States, being part of the proceeds alleged to be owing by the Government on certain contracts it had entered into with the above-named corporation.

On May 23, 1963, Norman C. Witbeck, an employee in Electro's now defunct Bethesda, Maryland, branch office, obtained a judgment in the Circuit Court for Montgomery County, Maryland, against the corporation for back wages in the amount of $3,412.02, plus interest and costs. Since the company had been encountering serious financial difficulties, however, it was unable to satisfy the judgment, and Witbeck was compelled to search for corporate assets on which to levy attachment. In pursuing this course, Witbeck soon discovered that all tangible assets of Electro had been appropriated to other debts and that the only property available for possible satisfaction of the judgment was the Government contracts on which payment had not yet been made. In an effort to reach the proceeds alleged to be due on these contracts, Witbeck returned to the same Maryland court and petitioned for appointment of a receiver to collect a sum sufficient to satisfy his judgment. The court granted the relief requested and appointed plaintiff Patterson receiver with authority to collect from the Government an amount not to exceed $3,700.

Prior to the appointment of Patterson as receiver, Electro had assigned all the proceeds on the contracts in question to the Northwestern National Bank of Minneapolis as security for loans made. After it was made a party to this action, the bank filed an answer which states that long prior to plaintiff's appointment as a receiver, Electro had assigned all contracts it had entered into with the United States to the bank, that such assignments complied in all respects with the Assignment of Claims Act of 1940, and that the bank's rights to the money payable under the contracts are superior to plaintiff's rights. Plaintiff claims that defendant owes a total of $26,345.89 on the contracts with Electro and also points out that in response to interrogatories propounded to it, the assignee bank declared that its interest in the proceeds due on the contracts amounts to some $22,069.67. If plaintiff's figures should prove to be correct, it appears that there would be a residue of more than $4,000 to be applied for the benefit of Electro or its creditors after the satisfaction of the amount due the bank. However, the amount owed by the United States has not been established and appears to be in dispute. Defendant asserts that some of the contracts are presently before an administrative body for a final determination on the question of compensation. Also, we do not know to what extent the amount due Electro is subject to reductions or offsets by the defendant. The Government has refused to recognize or

pay plaintiff on demand, asserting that under the Assignment of Claims Act of 1940 (31 U.S.C. § 203 (1958)), it is authorized to pay only the validly designated assignee of the claims in question, i. e., the Northwestern Bank.

The primary question presented by the motions of the parties is whether plaintiff, as a special receiver appointed by a state court to collect a portion of Electro's claims against the United States in order to satisfy the judgment of an individual creditor, may maintain an action against the defendant in this court; and, if not, whether if plaintiff amends his petition to show that he has been appointed the general receiver for Electro by a court of competent jurisdiction, he would then have standing to sue.

The statute in issue reads, in relevant part, as follows:

All transfers and assignments made of any claim upon the United States, or of any part or share thereof, or interest therein, whether absolute or conditional, and whatever may be the consideration therefor, and all powers of attorney, orders, or other authorities for receiving payment of any such claim, or of any part or share thereof, * * * shall be absolutely null and void, unless they are freely made and executed in the presence of at least two attesting witnesses, after the allowance of such a claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof. * * *

The provisions of the preceding paragraph shall not apply in any case in which the moneys due or to become due from the United States * * * are assigned to a bank, trust company, or other financing institution, * * *

The prohibitory language contained in the first paragraph of the statute above dates back in essentially its present form to 1853 (10 Stat. 170, Rev.Stat. § 3477 (1875)), and originally to an 1846 statute (9 Stat. 41).[1] Over the years it has consistently been recognized by the courts to have two purposes—primarily, to prevent fraud; and secondarily, to avoid multiple litigation. More specifically, Congress is said to have had as its major objective the prohibiting of trafficking in claims against the Government such as by persons who would be in a position to exert political pressure or improper influence in prosecuting claims before the departments, the courts, or the legislature. United States v. Aetna Casualty & Surety Co., 338 U.S. 366, 70 S.Ct. 207, 94 L.Ed. 171 (1949); Spofford v. Kirk, 97 U.S. 484, 24 L.Ed. 1032 (1878); Goodman v. Niblack, 102 U.S. 556, 26 L.Ed. 229 (1880); Price v. Forrest, 173 U.S. 410, 19 S.Ct. 434, 43 L.Ed. 749 (1899). Secondarily, the courts have ascribed to Congress the motive of enabling the United States to deal exclusively with the original claimant instead of with several parties, thus obviating the necessity of having to inquire into the validity of specific transfers or assignments of the claim, minimizing subjection to successive litigation upon the same claim, and eliminating the risk of double payment or multiple liability. United States v. Aetna Casualty & Surety Co., supra; Spofford v. Kirk, supra; Seaboard Air Line Ry. v. United States, 256 U.S. 655, 41 S.Ct. 611, 65 L.Ed. 1149 (1921); Singer v. United States, 126 Ct.Cl. 417, 115 F.Supp. 166 (1953).

Although the statute was strictly construed for a period of time following its original enactment to invalidate virtually all assignments, the development of case law in succeeding years indicates a gradual broadening of the types of transfers excluded from the prohibitory mandate of the act. Thus, the courts have held the following assignments or transfers to be by "operation of law," and exempt from the relevant statutory provision: transfers by intestate succession or tes-

---

1. The second paragraph was added in 1940 to facilitate national defense financing by expressly providing an exception, to the general prohibition in the case of assignments to authorize financial institutions.

tamentary disposition, Erwin v. United States, 97 U.S. 392, 24 L.Ed. 1065 (1878); by consolidation or merger to the successor of a claimant corporation, Seaboard Air Line Ry. v. United States, supra; by judicial sale, Western Pacific R. Co. v. United States, 268 U.S. 271, 45 S.Ct. 503, 69 L.Ed. 951 (1925); by subrogation to an insurer, United States v. Aetna Casualty & Surety Co., supra; by statutory provision to a trustee in bankruptcy, McKay v. United States, 27 Ct.Cl. 422 (1892), Accord, Erwin v. United States, supra; and by voluntary assignment of all the assets of an insolvent debtor for the benefit of creditors, Goodman v. Niblack, supra.

The right of a receiver to sue in this court, notwithstanding the anti-assignment statute, was recognized in Redfield v. United States, 27 Ct.Cl. 393 (1892), under the authority of Goodman v. Niblack, supra. This court, however has expressly limited the application of the Goodman exception to include only "general" receivers—those who had been appointed receiver of all the assets of the original claimant and not merely a portion of those assets sufficient only to satisfy the claims of an individual creditor to the exclusion of other creditors. George Howes & Co. v. United States, 24 Ct.Cl. 170 (1889). In the Howes case, the court dismissed the claim of a "limited" receiver, acting on behalf of a single creditor and attempting to attach or collect sums due to the debtor from the Government. The court pointed out that the anti-assignment statute was aimed at just such a situation.

> This proceeding was in the nature of an equitable attachment of a claim against the United States in favor of a single creditor, and the transfer of the claim to a receiver for the benefit of such creditor alone.

> If attachments, subrogations, and assignments, such as those relied upon by the claimant, Wells, as receiver, should be upheld, the Government would not only be deprived of the right to settle with those claimants to whom it was originally indebted, whose estates became thus attached, but might also be involved in controversies between such claimants and their creditors as well as between conflicting attaching creditors in different courts, contrary to the spirit if not the letter of the law, passed to prevent frauds upon the Treasury of the United States. (24 Ct.Cl. at 184)

■ Plaintiff in the present case acknowledges that the holding in Howes runs directly counter to the contentions on which he bases his claim. But he urges us to ignore or invalidate that case on two alternative grounds—either because Howes and Goodman v. Niblack, upon which it was predicated, were in effect overruled by the Supreme Court in Price v. Forrest, supra, or because they are simply wrong under general principles of law. We decline to follow plaintiff's suggestions, and conclude to the contrary that Howes is both valid as precedent and correct as a matter of law.

In Goodman v. Niblack, the Supreme Court declared an assignment for the benefit of creditors to be a transfer by "operation of law," under analogy to a transfer in bankruptcy, previously included within the exception to the statute by Erwin v. United States, supra. The Court was persuaded by the fact that in each instance the entire estate of the debtor was assigned to a single trustee or group of trustees acting in concert. No danger of piecemeal litigation or multiple liability to the Government was envisaged as a consequence of excepting this type of transfer from the operation of the statute. The following significant language of Goodman was singled out by the Court of Claims in Howes as the basis for its decision refusing to extend the "operation of law" exception so far as to cover partial receiverships:

> * * * there can be no purpose in such cases to harass the government by multiplying the number of persons with whom it has to deal, nor any danger of enlisting improper influences in advocacy of the claim, and that the exigencies of the party

who held it justified and required the transfer that was made. In what respect does the voluntary assignment for the benefit of his creditors, which is made by an insolvent debtor *of all his effects,* which must, if it be honest, include a claim against the government, differ from the assignment which is made in bankruptcy? There can here be no intent to bring improper means to bear in establishing the claim, and it is not perceived how the government can be embarrassed by such an assignment. The claim is not specifically mentioned, and is obviously included only for the just and proper purpose of appropriating the whole of his effects to the payment of all his debts. * * * [Emphasis in the original] 102 U.S. at 560–1.

The Supreme Court in Price v. Forrest, far from overruling Goodman v. Niblack, upheld the prior decision, and in fact quoted the same paragraph relied upon by the Court of Claims above. In Price the Court held a state-court appointed receiver to be exempted from the prohibition of the statute, but there is no indication that the receiver in question was a special, partial, or limited receiver, as is plaintiff in the case at bar. In that case, the chancery court of New Jersey had complete jurisdiction over the debtor Price, a domiciliary of that state, and had authority to put into the hands of his receiver any chose in action belonging to the debtor. The New Jersey Court of Errors and Appeals affirmed the chancery court's appointment of Borcherling as receiver and its issuance of an order restraining Price from collecting any of the money due from the Government. Thus, the highest court of the state of the debtor's domicile, in a dispute between the receiver and the heirs of the debtor, had finally and authoritatively determined that the receiver, acting under the orders of chancery, had superior title to the personal property of the debtor as against the heirs. (See also Borcherling v. United States, 35 Ct.Cl. 311, 338–339 (1900), in which the above-men-

tioned receiver eventually recovered the sums in question from the United States.)

It cannot be said that Price v. Forrest overruled either Goodman v. Niblack or George Howes & Co. v. United States, since the Court was dealing with an essentially dissimilar factual situation. Nor is this conclusion altered by the decision in Borcherling v. United States, supra, aff'd 185 U.S. 223, 22 S.Ct. 607, 46 L.Ed. 884 (1902). That case held that the Court of Claims had jurisdiction to entertain the claim of Borcherling, the state-court appointed receiver, against the United States for title to the debtor's personal property had become vested in him by virtue of the laws of the State of New Jersey and the decrees of its courts. Any right of Price to collect the money at issue was deemed to have been extinguished when the receiver was appointed, and at that point "the only one in law, at least as against Price and such creditors, entitled to collect the money was the receiver." 35 Ct.Cl. at 340.

The Borcherling case, while expressly upholding the right of a state-court appointed receiver to bring suit here and imposing an obligation upon the United States to recognize and deal with that receiver, did not abolish the distinction between "general" and "limited" receivership enunciated in George Howes & Co. v. United States. In this regard, Borcherling and Price v. Forrest are quite consistent with George Howes & Co. v. United States and Goodman v. Niblack. The four cases have significant value as precedent for the present litigation, as they provide a reasonable framework for effectuating the purposes generally imputed to Congress in enacting the anti-assignment statute—of preventing fraud and immunizing the United States from the inconvenience and uncertainty of having to deal with several parties. Although this second policy of preventing multiple litigation and piecemeal adjudication has been relegated by judicial precedent to a role somewhat lesser in importance in the general statutory

**332**

scheme than that of preventing fraud, still it has been recognized to have considerable validity and vitality. United States v. Shannon, 342 U.S. 288, 293, 72 S.Ct. 281, 286, 96 L.Ed. 321 (1952); see United States v. Aetna Casualty & Surety Co., supra. Preserving the distinction between "general" and partial receiverships gives proper effect to this policy. The liberalizing trend of the courts in expanding the "operation of law" exception to the statute has been continuous since Erwin v. United States, supra, but the case at hand cannot be made to fit within the limits of the exception as developed to date.

Since we have concluded that plaintiff has no standing to maintain this action in his present capacity as a limited receiver, the petition would in normal circumstances be dismissed. Plaintiff, however, has specifically requested that in the event we find his capacity for suit to be lacking as a result of his limited powers as receiver, he be afforded a reasonable opportunity to take such steps as are necessary to cure any defects in his authority.

Accordingly, we will hold the present action in abeyance for a period of 60 days to afford plaintiff an opportunity to obtain an order from a court of competent jurisdiction appointing him general receiver to receive and collect all amounts that may be due Electro on the Government contracts and to hold the same in trust, subject to the orders of the appointing court, for the benefit of all the creditors of the corporation and others who may be entitled thereto. If plaintiff files an amended petition [2] showing compliance with this requirement within the indicated time his standing to sue will be recognized under the authority of Borcherling v. United States, supra. Failure to meet this condition, however, will result in granting defendant's motion for summary judgment and a dismissal of the petition.

2. If plaintiff files an amended petition, it should have annexed thereto a copy of the order appointing him general receiver and should comply with the first sentence of our Rule 17(d) by identifying the Government contracts involved.