WEBSTER FACTORS, INC., Plaintiff, and Alter Milberg and Lawrence Milberg, Plaintiff-Intervenors

v.

The UNITED STATES.

No. 49–66.

United States Court of Claims.

Jan. 22, 1971.

Lawrence Milberg, Great Neck, N. Y., attorney of record, for plaintiff and for plaintiff-intervenors.

David W. Miller, Washington, D. C., with whom was Asst. Atty. Gen. Shiro

Kashiwa, for defendant. Rembert A. Gaddy, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS and SKELTON, Judges.

## OPINION

PER CURIAM:

This case was referred to Chief Trial Commissioner Marion T. Bennett with directions to make findings of fact and recommendation for conclusions of law under the order of reference and Rule 134(h). The commissioner has done so in an opinion and report filed on March 16, 1970. Exceptions to the commissioner's opinion, findings and recommended conclusion of law were filed by plaintiff and plaintiff-intervenors. Defendant urged that the court adopt the commissioner's opinion, and recommended conclusion of law. The case has been submitted to the court on oral argument of counsel and the briefs of the parties. Since the court agrees with the commissioner's opinion, findings and recommended conclusion of law it hereby adopts the same, as hereinafter set forth, as the basis for its judgment in this case. Therefore, it is concluded that plaintiff-intervenors are entitled to recover in the sum of $592.46 and judgment is entered for them against defendant in that amount. The claim of the plaintiff Webster Factors, Inc., and defendant's claims for setoff against plaintiff and plaintiff-intervenors are dismissed.

## OPINION OF COMMISSIONER

BENNETT, Chief Commissioner:

This is a contract case involving a dispute over payment of real estate taxes and applicability of the Assignment of Claims Act of 1940, 31 U.S.C. § 203 (1964), hereafter sometimes referred to as the Anti-Assignment of Claims Act. Defendant, acting through the Assistant Postmaster General, entered into a lease on July 13, 1961, with certain persons named Leventhal for a building in Brooklyn, New York, to be used for postal purposes. It was a 30-year lease, commencing May 15, 1961. Rent was set at $37,500 per year. The lease required the lessor to pay all taxes and to keep the property in good repair and tenantable condition.

The lease contained a tax escalation clause rider, the test of which is quoted in the findings. In summary, it provided that, if the lessor paid real property taxes on the property in excess of $9,800 during any year, the defendant would pay the lessor an amount equal to the excess. If the taxes fell below $9,800 in any given year, the rent due would be decreased by the amount of the difference. These adjustments were to be made annually after the lessor submitted satisfactory proof of the taxes paid.

After the lease was entered into, the property changed ownership several times within a few years. On July 25, 1961, the Leventhals conveyed it to Tillie Feldman who put a first mortgage of $350,000 on it with the Lincoln Savings Bank, located in Brooklyn, New York, and, as additional security for the loan, also assigned the lease to the bank. On the same day, Mrs. Feldman reconveyed it to the Leventhals. This maneuver was made known to defendant which accepted the notice and assignment as complying with the Anti-Assignment of Claims Act.

On August 14, 1961, the Leventhals conveyed the property to Glenex Construction Corporation of New York, subject to the first mortgage and assignment held by the bank. The required formalities of notice were complied with and defendant was told that, as Glenex was now owner and the lease had been assigned to it, defendant should pay the rent to the new owner. Defendant did so from and after August 1, 1961.

On or about August 25, 1961, plaintiff here, Webster Factors, Inc., of New York, loaned Glenex the sum of $75,000 on the security of a second mortgage on the property and an assignment of defendant's lease thereon, subject to the previous assignment to the bank. De-

fendant was not notified of this until November 20, 1963, when a letter arrived from attorney Lawrence Milberg with the information that his law firm represented Webster Factors, Inc., holder of a second mortgage and a second assignment from Glenex, and expressing intent to make certain claims under the lease.

In the meantime, beginning in March 1962, defendant had been making numerous requests of Glenex and the bank for copies of paid tax receipts so that the required annual adjustments pursuant to the tax escalation clause could be made. The receipts were not submitted. After the November 20, 1963 notice from Mr. Milberg, defendant requested receipts from Webster Factors, Inc. The receipts were not furnished until March 1965 after a series of intervening events.

On February 25, 1963, the Lincoln Savings Bank notified defendant that the first mortgage was in default and demanded that rent be paid to the bank under the assignment it held. Defendant complied and the unadjusted rents were paid to Lincoln Savings Bank for the period beginning February 1, 1963 and until March 31, 1965. Defendant notified Glenex which had been receiving the rents since its purchase of the property in August 1961.

Maintenance and repair of the premises became a problem with Glenex. Defendant made some repairs and billed Glenex for them. Finally, Glenex, which sometime before November 23, 1963, had defaulted in its payments on the second mortgage to plaintiff Webster Factors, Inc., refused outright to make needed repairs. At this point, plaintiff, with defendant's knowledge and approval, made the repairs at its own expense as an alternative to having defendant make them and deduct the cost thereof from the rent. In 1964 and 1965 plaintiff spent approximately $2,700 on such repairs. Plaintiff contends that on November 23, 1963, upon the default of

Glenex, it entered into possession as lessor under the second mortgage and as holder of the second assignment, and that from that date all rents were payable to plaintiff. Plaintiff took a deed to the subject property from the referee in foreclosure proceedings on the second mortgage on December 30, 1964, on which day plaintiff conveyed the property to Alter I. Milberg (president of Webster Factors, Inc.) and to attorney Lawrence Milberg (stockholder in plaintiff and counsel for plaintiff) who are plaintiff-intervenors in this case.

Foreclosure of the second mortgage came after plaintiff entered into a letter agreement with the bank, holder of the first mortgage, on January 14, 1964. Pursuant to this agreement, the bank refrained from foreclosing the first mortgage and applied rentals paid by defendant after said date, as required by the agreement, to payments due the bank on its mortgage, the taxes, and other necessary bills. Plaintiff put up $12,971.61 to be held by the bank in escrow to assure payments sufficient to pay the 1962–63 real estate taxes and penalties. It was agreed that any rentals insufficient to keep up all payments and charges due would be paid by plaintiff and any rentals in excess of these requirements would be turned over to plaintiff. Defendant was advised by letter from the bank on April 13, 1965, that payments on the first mortgage were current and that rents could be paid to the landlord which had received a deed to the property on December 30, 1964.

On March 4, 1965, Alter I. Milberg furnished the long-awaited tax receipts to defendant—with one exception later provided—and requested that defendant pay the tax refunds claimed due, under the escalation clause of the lease, either to plaintiff or to the Milbergs, or to both. Defendant, on October 18, 1965, advised that after setting off the amounts due it against the amounts due

the lessor under the clause, a balance of $41.38 [1] was due lessor.

This news left plaintiff dissatisfied because it claims no responsibility for any taxes prior to the tax year beginning July 1, 1963. Taxes prior to said date are said to be the responsibility of Glenex. The net due defendant is computed at $4,375.92. The sum claimed by plaintiff and plaintiff-intervenors is $4,417.30, said not to be subject to a set-off as asserted by defendant. The stipulation of the parties admitting payment of the $41.38 adjusts the net claim to $4,375.92. Interest is claimed on this amount. The claim broken down as between plaintiff and the intervenors is $3,221.58 for the former and $1,154.34 for the latter.

The main thrust of plaintiff's claim is that when Glenex left the picture by default and on November 23, 1963, plaintiff took peaceful possession as second mortgagee and assignee and assumed responsibility for maintenance and repairs, it became the owner of an estate in land which created a landlord and tenant relationship between it and defendant to which the Assignment of Claims Act of 1940 had no relevance. From this premise it argues that it was entitled to all rents and that defendant may not set off against defendant's liability for additional rentals (excess taxes) to plaintiff and plaintiff-intervenors as its landlords a claim for a refund in rents (deficiency in taxes) for prior years against its previous landlord, Glennex.

It is clear that the tax escalation clause is an integral part of the rent provision, and that the rent due for any one year in dispute amounted to the $37,500 base, plus or minus the tax adjustment for that year. To determine the identity of parties who should receive the benefit, or bear the burden of the tax adjustments, it is first necessary, at the expense of some repetition of the facts, to determine which parties were to be paid rents for the tax years in question.

It is undisputed that the original lessor, the Leventhals, duly received rents for the period from May 15, 1961 until July 31, 1961. During this period, a $350,000 loan was secured both by a first mortgage on the property and by an assignment of the lessor's rights under the lease. Under the latter recourse, the mortgagee, Lincoln Savings Bank, would receive all rents from the property for the period necessary to make current the mortgage in the event of default, but would not be responsible for any of the lessor's obligations under the lease.

On August 14, 1961, the Leventhals conveyed the property to Glenex Construction Corporation, subject to the first mortgage and the assignment held by Lincoln Savings Bank. Although the deed was dated August 28, 1961, the Government was notified and agreed to pay rents due after August 1, 1961, to Glenex. On February 25, 1963, Lincoln Savings Bank notified the Government that the first mortgage was in default. Rather than foreclose the mortgage or take rents as a mortgagee in possession, Lincoln Savings Bank chose to exercise it rights under the assignment and thereupon demanded the payment of rents, leaving Glenex with the obligations of lessor. The Government recognized the assignment as complying with the Assignment of Claims Act of 1940, as amended, 31 U.S.C. § 203 (1964), and paid rents to Lincoln Savings Bank from February 1, 1963 until March 31, 1965. *See*, Freedman's Saving & Trust Co. v. Shepherd, 127 U.S. 494, 8 S.Ct. 1250, 32 L.Ed. 163 (1888).

For plaintiff and plaintiff-intervenors to recover any share of the tax adjustment portion of the rent for the period February 1, 1963 until March 31, 1965, they must show that they are not barred by the Anti-Assignment of Claims Act. More specifically, they must show either

---

[1]. The petition admitted payment of $41.58. The parties subsequently stipulated that $41.38 was the correct figure.

(1) that they were the recipients of a valid assignment from Lincoln Savings Bank, or (2) that they received rights to the rents from the lessor voluntarily by being its "duly authorized agent" or involuntarily by becoming a mortgagee in possession.

The statute reads in relevant part, as follows:

> All transfers and assignments made of any claim upon the United States, or of any part or share thereof, or interest therein, whether absolute or conditional, and whatever may be the consideration therefor, and all powers of attorney, orders, or other authorities for receiving payment of any such claim, or of any part or share thereof, * * * shall be absolutely null and void, unless they are freely made and executed in the presence of at least two attesting witnesses, after the allowance of such a claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof. * * * The provisions of this section shall not apply to payments for rent of post office quarters made by postmasters to duly authorized agents of the lessors. [31 U.S.C. § 203.]

The purposes of this statute were recently reiterated in Patterson v. United States, 173 Ct.Cl. 819, 354 F.2d 327 (1965). They are "primarily, to prevent fraud; and secondarily, to avoid multiple litigation." 173 Ct.Cl. at 823, 354 F.2d at 329. The court went on to explain, as follows:

> * * * Congress is said to have had as its major objective the prohibiting of trafficking in claims against the Government such as by persons who would be in a position to exert political pressure or improper influence in prosecuting claims before the departments, the courts, or the legislature. United States v. Aetna Casualty & Surety Co., 338 U.S. 366, 70 S.Ct. 207, 94 L.Ed. 171 (1949); Spofford v. Kirk, 97 U.S. 484, 24 L.Ed. 1032 (1878); Goodman v. Niblack, 102 U.S. 556, 26 L.Ed. 229 (1880); Price v. Forrest, 173 U.S. 410, 19 S.Ct. 434, 43 L.Ed. 749 (1899). Secondarily, the courts have ascribed to Congress the motive of enabling the United States to deal exclusively with the original claimant instead of with several parties, thus obviating the necessity of having to inquire into the validity of specific transfers or assignments of the claim, minimizing subjection to successive litigation upon the same claim, and eliminating the risk of double payment or multiple liability. United States v. Aetna Casualty & Surety Co., supra; Spofford v. Kirk, supra; Seaboard Air Line Ry. v. United States, 256 U.S. 655, 41 S.Ct. 611, 65 L.Ed. 1149 (1921); Singer v. United States, 126 Ct.Cl. 417, 115 F.Supp. 166 (1953).

> Although the statute was strictly construed for a period of time following its original enactment to invalidate virtually all assignments, the development of case law in succeeding years indicates a gradual broadening of the types of transfers excluded from the prohibitory mandate of the act. Thus, the courts have held the following assignments or transfers to be by "operation of law," and exempt from the relevant statutory provision: transfers by intestate succession or testamentary disposition, Erwin v. United States, 97 U.S. 392, 24 L.Ed. 1065 (1878); by consolidation or merger to the successor of a claimant corporation, Seaboard Air Line Ry. v. United States, supra; by judicial sale, Western Pacific R. Co. v. United States, 268 U.S. 271, 45 S.Ct. 503, 69 L.Ed. 951 (1925); by subrogation to an insurer, United States v. Aetna Casualty & Surety Co., supra; by statutory provision to a trustee in bankruptcy, McKay v. United States, 27 Ct.Cl. 422 (1892), Accord, Erwin v. United States, supra; and by voluntary assignment of all the assets of an insolvent debtor for the benefit of creditors, Goodman v. Niblack, supra. [173 Ct.Cl. at 823–824, 354 F.2d at 329–330.]

■ The assignment to Lincoln Savings Bank, effective upon the default of Glenex, may be deemed a proper assignment since it included all rights to rents during the period necessary to bring the mortgage up to date. Against the claims of the bank-assignee, however, defendant is entitled to offset overpayments under the same rental agreement made to the assignor, Glenex. McKnight v. United States, 98 U.S. 179, 25 L.Ed. 115 (1878); see, 3 Williston, Contracts § 432 (3d ed. 1960). on the other hand, the voluntary assignment of a portion of the rents made by Lincoln Savings Bank to plaintiff by way of the January 14, 1964 agreement was void, being violative of the Anti-Assignment of Claims Act. If enforced, the latter assignment would require the Government to pay rent to two different parties, and it would deny the Government the right to set off certain downward tax adjustments from the upward tax adjustments in rent. See, Grace, to Use of Grangers Mut. Ins. Co., v. United States, 76 F.Supp. 174 (1948); United States v. Shannon, 342 U.S. 288, 291–292, 72 S.Ct. 281, 96 L.Ed. 321 (1952).

■ Although plaintiff undertook certain obligations required of the lessor, Glenex, plaintiff could not have received any rights to rents as its agent during the period February 1, 1963 to December 30, 1964, since the lessor retained no such rights which it could assign. For the same reason, plaintiff could not acquire such rights to rents from Glenex, involuntarily, by becoming a mortgagee in possession. Neither did plaintiff nor plaintiff-intervenors receive immediate rights to rents when they acquired title to the property December 30, 1964, since such title remained subject to the rights of the first mortgagee who was protected by a valid assignment in effect through March 31, 1965.

■ Accordingly, plaintiff is not entitled to any rent, and plaintiff-intervenors are entitled to only that portion of the rent computed as tax adjustment for the period April 1, 1965 to June 30, 1965, or $592.46. Interest is not allowable. Poorvu v. United States, 190 Ct.Cl. 640, 420 F.2d 993 (1970). Defendant's claims for setoff against plaintiff and plaintiff-intervenors are dismissed.